Frank J. LINEBERGER, Sr., Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–2043.

United States Court of Veterans Appeals.

Aug. 3, 1993.

Frank J. Lineberger, Sr., pro se.

Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Jacqueline E. Monroe, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Judges.

KRAMER, Judge:

Appellant, Frank J. Lineberger, Sr., appeals a July 30, 1991, decision of the Board of Veterans' Appeals (BVA). The decision denied entitlement to service connection for ichthyosis vulgaris (a skin condition "characterized by the presence of fine scaling principally" of the extremities and neck, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 813 (27th ed. 1988)), arthritis of the right and left knees and of the lumbosacral spine. It also denied increased ratings for traumatic arthritis of the right elbow, the right shoulder, and the neck, each currently rated as 10% disabling, and denied a certificate of eligibility for financial assistance in acquiring specially adapted housing. The Court has jurisdiction under 38 U.S.C.A. § 7252(a) (West 1991).

Appellant served in the U.S. Army from September 1950 to December 1952. R. at 24. On October 2, 1951, while in Korea, he suffered penetrating wounds to the right upper forearm and right flank, resulting in a fracture of the right ulna bone and a laceration of the right ulnar nerve. R. at 28, 33. Appellant is currently service connected for residuals of a shell-fragment wound of the right forearm, rated at 70%; residuals of a gunshot wound of the right ilium, rated at 20%; and traumatic arthritis of the right elbow, rated at 10%, right shoulder, rated at 10%, and neck, rated at 10%. His combined rating is 80%. R. at 455–56. He has also been receiving a spe-

cial monthly compensation since September 1958 for the loss of use of one hand. *Id; see* 38 U.S.C.A. § 1114(k) (West 1991); 38 C.F.R. § 3.350(a) (1992).

■ The Secretary of Veterans Affairs (Secretary) has moved for remand on multiple grounds with respect to the issue of entitlement to service connection for ichthyosis vulgaris of the extremities and neck. In addition to these grounds, the Court also notes that, pursuant to the Secretary's duty to assist, the BVA should have obtained a medical examination, *see* 38 U.S.C.A. § 5107(a) (West 1991); 38 C.F.R. §§ 3.157, 3.326, 3.327 (1992), to determine: what, if any, skin condition appellant had in service; whether it increased in disability during service, and if so, whether such increase was attributable to the natural progress of the condition; and what skin condition appellant presently has, and the relationship of such skin condition to any skin condition present in service.

■ As to appellant's claim of entitlement to service connection for arthritis of the right and left knees and the lumbosacral spine, appellant contends that these conditions are the result of an impaired gait which he attributes to residuals of his right flank wound. R. at 402. The BVA correctly noted, inter alia, that the veteran's service medical records were negative for evidence of arthritis in these locations, and that the first post-service clinical evidence of arthritis in these areas was many years after service (October 1989 for the right knee, R. at 409, April 1990 for the left knee, R. at 439, and August 1974 for the lumbosacral spine, R. at 408). R. at 18–19. In addition, a Department of Veterans Affairs (VA) orthopedic examiner, in a medical report dated October 25, 1989, stated:

3. It is difficult to relate the hip and knee pain adequately to [appellant's] injury in the posterior ilium. However[,] an altered gait pattern *may have contributed* to premature degeneration of these joints.

4. The low back pain also *may be secondary* to [appellant's] pre-existing conditions but it is again *more compatible*

*with the degenerative process present in most of the geriatric population.*

R. at 402 (emphasis added). Finally, Dr. Archie T. Coffee, Jr., in a medical report dated April 9, 1990, stated that he

feels that [appellant's] degenerative osteoarthritis involving these areas ... account[s] for his limitation of motion. *It is possible* that this could be in part secondary to a blast injury that occurred in the Korean War.

R. at 435 (emphasis added). In light of this evidence, the BVA's conclusions that appellant's arthritis of the right and left knees and the lumbosacral spine were not caused by his service-connected disabilities, are plausible and, therefore, are not clearly erroneous. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

■ With respect to an increased rating for traumatic arthritis of the right elbow, currently rated as 10% disabling, the October 25, 1989, VA orthopedic examination report, noted that "[t]he elbow demonstrates ROM [range of motion] from 30° shy of full extension to 40° of flexion." R. at 402. The BVA considered this evidence, and stated:

Recent examination discloses that the veteran has right elbow extension to 30 degrees and flexion to 105 degrees.... Since an increased rating for arthritis of the right elbow would require either extension limited to 75 degrees [38 C.F.R. § 4.71a] (Diagnostic Code 5207) or flexion limited to 90 degrees (Diagnostic Code 5206), it is clear that a rating greater than the currently assigned 10 percent ... is not indicated.

R. at 19. *See* 38 C.F.R. § 4.71a, Diagnostic Codes (DC) 5003, 5010 (1992). The BVA failed to provide an adequate statement of the reasons or bases why it determined that the VA examiner's statement that "[t]he elbow demonstrates ROM from 30° shy of full extension to 40° of flexion" (R. at 402) is the same as its determination that the elbow ROM was "extension to 30 degrees and flexion to 105 degrees" (R. at 19). *See Gilbert, supra.*

■ Regarding appellant's claim for an increased rating for traumatic arthritis of the right shoulder, currently rated as 10% disabling, the BVA, inter alia, considered the medical report of Dr. Coffee, and stated that the

> examination revealed right shoulder abduction to about 90 degrees, with pain upon attempted forceful abduction past that point.... This clinical evidence appears to present a picture of a rapidly deteriorating right shoulder joint, at least as far as abduction is concerned. However, the veteran is fortunately, able to raise his right arm above shoulder level, and has full forward flexion. Therefore, a rating greater than the currently assigned 10 percent for traumatic arthritis of the right shoulder is not warranted.

R. at 19. The Court notes that, under DC 5201, "Arm, limitation of motion ... At shoulder level" is rated as 20% disabling, and 38 C.F.R. § 4.71, Plate I measures both shoulder forward elevation (flexion) and shoulder abduction. Pursuant to Plate I, normal ROM is 180 degrees. The BVA should have specified, with reasons or bases, whether or not appellant was entitled to a 20% rating under DC 5201 as a result of his limitation of arm motion in abduction only, or whether, in order to be rated under DC 5201, both limitation of flexion and abduction are required.

■ Regarding appellant's claim for an increased rating for traumatic arthritis of the neck, currently rated as 10% disabling, Dr. Coffee, in his report, stated that the ROM of appellant's cervical spine was limited by "at least 25% upon extension ... and right and left rotation.... Flexion is carried out fairly adequately." R. at 434–35. The BVA considered this evidence and stated:

> Examination of the cervical spine revealed adequate flexion, with slight limitation of extension and rotation.... In the absence of more than slight limitation of motion of the cervical spine [under DC 5290], a rating greater than the currently assigned 10 percent is not indicated.

R. at 19–20. The BVA should have provided an explanation, with reasons or bases, for its determination that a 25% limitation of motion in three planes constitutes no "more than slight limitation of motion." R. at 20. *See Gilbert, supra.*

■ With respect to the issue of entitlement to a certificate of eligibility for financial assistance in acquiring specially adapted housing, the BVA noted that, to be eligible, appellant would need a permanent and total rating due either to bilateral blindness or to the loss of two extremities. *See* 38 U.S.C.A. § 2101 (West 1991); 38 C.F.R. § 3.809 (1992). In light of several physicians' statements that, although he has lost the use of his right upper extremity, appellant has use of his other extremities (R. at 393, 433–35), an October 18, 1991, VA ophthalmological examination report that appellant's vision is 20/50 in his right eye (R. at 496–97), and a February 1, 1990, private medical report that appellant's vision is 20/20 in his left eye (R. at 431–32), the Court concludes that the BVA's implicit and explicit findings, that appellant neither has lost the use of two extremities nor is bilaterally blind, are plausible and, therefore, are not clearly erroneous. *See Gilbert, supra.*

■ Finally, based on appellant's present combined rating of 80% for multiple disabilities, the BVA's determination to award service connection for a right eye injury, and the issues discussed in this decision, the BVA should have addressed the issue of a total disability rating based on individual unemployability. *See* 38 U.S.C.A. § 1502(a) (West 1991); 38 C.F.R. §§ 3.340(a), 4.17 (1992); *EF v. Derwinski,* 1 Vet.App. 324 (1991); *Hatlestad v. Derwinski,* 1 Vet.App. 164 (1991); *Myers v. Derwinski,* 1 Vet.App. 127 (1991); *Payne v. Derwinski,* 1 Vet.App. 85 (1990).

Upon careful consideration of the record and the pleadings of the parties, that much of the decision of the BVA which denied entitlement to service connection for arthritis of the right and left knees and the lumbosacral spine, and denied a certificate of eligibility for financial assistance in ac-

quiring specially adapted housing, is AF-FIRMED. The decision of the BVA is otherwise VACATED and REMANDED for further proceedings consistent with this decision. Appellant is free to introduce additional medical evidence. *See Quarles v. Derwinski,* 3 Vet.App. 129, 140–41 (1992).