**Harlan R. SCHROEDER, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–473.

United States Court of Veterans Appeals.

Feb. 16, 1994.

James W. Deremo, certified representative, was on the pleadings, for appellant.

James A. Endicott, Jr., Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and John D. Lindsay, Jr., Washington, DC, were on the pleadings, for appellee.

Before FARLEY, MANKIN and STEINBERG, Judges.

MANKIN, Judge:

Harlan R. Schroeder (appellant) appeals a December 9, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to service connection for residuals of a right wrist injury, claimed as secondary to postoperative residuals of a service-connected shrapnel injury, denying reimbursement of unauthorized medical expenses,

222

and denying entitlement to a higher disability rating due to aggravation of the service-connected injury. The appellant contends that the BVA failed to support its decision with sufficient reasons or bases, and that the Secretary failed to fulfill his duty to assist. The VA asserts, however, that the Board decision was sufficiently supported and that no duty to assist ever arose because claims regarding a higher disability rating for the appellant's service-connected injury and service connection for a psychiatric disability were not properly before the Board.

We find that the appellant submitted a well-grounded claim as to each of the claims before the Board, but that the Secretary failed to comply with his duty to assist the appellant. Furthermore, based upon the Secretary's failure to comply with the duty to assist, we find that the claim regarding reimbursement of unauthorized medical expenses was improperly denied by the Board. Additionally, we find that the claims regarding an increased rating for the service-connected disability were properly before the Board, and that the Board failed in its duty to assist the appellant in this regard as well. Accordingly, we vacate the Board's decision and remand this matter to the Board for a readjudication consistent with this opinion.

## I. Factual Background

The appellant asserts that his right wrist injury, which he sustained in February 1990 while using a mechanical saw, was a proximate result of service-connected shrapnel wound residuals he suffered to his right hand while in the service. The appellant sustained the shrapnel wound in January 1973, and continued to have problems, eventually resulting in sixteen surgical procedures by the time his appeal reached the BVA.

In a Report of Medical Disability Evaluation from a May 1979 examination, the examining physician, Dr. Ortmeier, observed

marked decrease in sensation to pin prick, soft touch, and temperature in the distribution of the dorsal branch of the ulnar nerve. The area of paresthesias involves the ulnar side of the third finger, the entire ring and fifth fingers of the right hand. It extends proximally on the dorsum of the wrist and somewhat radially to the level of the carporadial joints, then extends in an ulnar course across the wrist just proximal to the ulnar styloid and then extends laterally up the ulnar side of the hand. The volar surface of the hand is involved only slightly on the ulnar side.

Additionally, the physician remarked:

Because of his inability to know the position of his fingers without looking at them.... [t]here is very definite loss of pain, light touch, and temperature sensation, as well as inability to tell objects by touch with the 5th, ring, and medial side of the 3rd finger of the right hand.

However, Dr. Ortmeier also noted that with concentration the appellant could flex and extend the fourth and fifth fingers of the right hand, although there was nearly total loss of flexion strength. Subsequently, service connection was established by rating decision on June 1, 1979, for shrapnel injury to the right hand rated as 30% disabling. The veteran was also assigned a 10% disability evaluation for a scar of the right wrist.

The appellant was examined again by Dr. Ortmeier in February 1982 following an operation in which a large neuroma in the dorsal of the right wrist was transposed. During the examination the appellant had difficulty making a tight fist and there was some weakness in grasp. Dr. Ortmeier stated that this was "somewhat attributable to the immobilization ... following surgery." Testing to pain using a sharp pin revealed anesthesia of the palmar and dorsal surfaces of all fingers and thumb, the palm and dorsal of the hand, and the distal wrist to a point three inches proximal to the ulnar tubercle on the dorsal of the wrist and four inches proximal to the volar crease on the volar aspect of the wrist. There was similar loss of sensation to light touch with soft cotton, and the appellant was not able to distinguish heat and cold of moderate degrees. Sensation was "nearly gone completely from the entire right hand" and the appellant was "able to easily tolerate a forciful [sic] pin prick with a sharp knife and pin to the point where blood is drawn without any flinching or pain being received whatsoever." There was "almost a total glove-like anesthesia" at the ulnar styloid crossing the wrists radially

in nearly a straight line and then swinging toward the palm of the hand and across the carpal-metacarpal crease of the wrist. The appellant was advised not to perform lifting or use a hammer or any other tools that could cause trauma to the right hand, forearm, or wrist.

In December 1986, the appellant was again examined by Dr. Ortmeier. The report of examination notes that the appellant stated that the use of a hammer or occasional bumping of the dorsum of the wrist caused a sharp pain to radiate to the right elbow. He stated that his hand was always numb as though "I have been sleeping on my arm." Pressure and light touch caused a sharp pain to radiate proximally to near the ulnar groove and there was a "definite decrease" in hand strength of the right hand as compared to the left. At the time of the examination, the appellant was employed as a door hanger, and stated that he had difficulty using some of the tools. Dr. Ortmeier confirmed the "glove-like anesthesia" involving the right hand, and stated that the appellant's disability was permanent and may become more severe with age. Dr. Ortmeier also stated that there was very little likelihood of improvement.

In February 1988, the appellant was examined by Gonzalo M. Sanchez, M.D. The appellant's hand was "weak in all muscle groups, indicating a mixed weakness of radial, median, and ulnar nerves." During the examination, the appellant stated that he had been able to use his hand to some extent as long as he maintained sight of it. For example, he was able to hold and use a hammer. However, during examination the appellant had no ability to grasp, and the doctor noted that the appellant had received a psychological evaluation and no problems were detected.

In November 1988, the appellant was examined by Susan E. Urbatsch, M.D. During the examination the appellant stated that his hand had become progressively worse. He stated that his hand was getting weaker, and that he could no longer hold onto objects. Upon examination, extension of the wrist was thirty degrees less in the right than the left. Flexion of the right wrist was equal to that of the left. The appellant could not feel a pinprick from the palm up to one and one-half inches past the palmar crease and had no sensation past the palmar crease. There was also decreased sensation just past a line between the radial and ulnar styloid.

In a letter of December 13, 1988, W. Neath Folger, M.D., stated that sensory examination of the appellant demonstrated complete absence of pain, touch, joint, or vibratory sensation in the dorsal and volar aspect of the right hand, but this condition abruptly changed to normal at the wrist. X-rays of the hand and wrist were negative, and there was no evidence of reflex sympathetic dystrophy or a neuropathy. In September 1989, the appellant suffered first and second degree burns of his right hand. Once the wound healed, the appellant exhibited a full range of motion.

In February 1990, the appellant submitted the claim which is the subject of this appeal. The claim sought benefits for a right wrist injury resulting from a near amputation suffered while using a mechanical saw. The appellant claimed the injury was the proximate result of his service-connected wrist injury because, as the appellant stated, if he could have felt the saw enter his wrist the injury would not have been as severe.

In his report of accidental injury, the appellant explained that while he was using a mechanical saw, he was distracted by his dog. When his attention returned to his work, he realized that his hand "was all but cut off." The appellant's hand was nearly amputated with a circumferential laceration going about the dorsum and the radial side of the wrist to the palmar side of the wrist on the radial side of the hand. A hospital report of post-accident treatment shows slight movement of the third, fourth, and fifth fingers and no feeling in the right hand.

On April 23, 1990, the rating board denied service connection for the mechanical saw injury to the right wrist, finding that the injury was not the proximate result of the appellant's service-connected disability. On appeal, the BVA's December 9, 1991, decision found no evidence that lack of feeling in the right wrist played a significant role in the

appellant's injury. Rather, the Board found that the injury was caused by the appellant's distraction. In addition, the Board found that while the appellant's service-connected disability produced lack of protective sensation in the area of the fourth and fifth fingers extending on that side to the hand and wrist, the wound from the saw was to the thumb side of the wrist. The Board inferred that the appellant should have been able to feel the saw cut.

During a personal hearing held in June 1990, the appellant's service representative indicated that there was a separate appeal pending on the issue of payment for hospital bills at a private facility. However, since the BVA denied the appeal for service connection of the saw injury, it also denied reimbursement for unauthorized medical expenses resulting from that injury. The Board also summarily found that the appellant was not entitled to a higher disability rating due to aggravation of the service-connected injury. This appeal followed.

## II. Analysis

### A. Service Connection for Right Wrist Injury

■ The appellant claims that he should have been service connected for the injury to his right wrist caused by the mechanical saw accident because this injury was proximately caused by his service-connected injury. The appellant's claim is based on 38 C.F.R. § 3.310(a) (1993), which provides, "Disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition."

The Secretary asserts that but for the momentary inattention of appellant and his haste to complete his task, the accident would not have occurred. Moreover, the Secretary notes that while the appellant's service-connected disability produced lack of cutaneous sensation in the region of the ulnar nerve distribution to the area of the fourth and fifth fingers extending on that side into the hand and wrist, the wound from the circular saw was to the thumb side of the wrist. The Secretary acknowledges that the

examination report from February 1988 reported that the appellant's right hand was "weak in all muscle groups indicating a mixed weakness of radial, median and ulnar nerves." The Secretary asserts, though, that this was only a preliminary finding and that subsequent nerve studies showed normal findings.

■ In applying for benefits, 38 U.S.C. § 5107(a) establishes "chronological obligations." *Gilbert v. Derwinski*, 1 Vet.App. 49, 55 (1990). In order to obtain benefits, the initial burden is borne and must be met by the veteran. *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). "[A] person who submits a claim ... shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). This Court has further held that a "well grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [38 U.S.C. § 5107(a)]." *Murphy*, 1 Vet.App. at 81. Additionally, the claim must be based upon competent evidence. *Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993). "Just as the BVA must point to a medical basis other than its own unsubstantiated opinion, ... [the] appellant cannot meet his initial burden by relying upon his own [unsubstantiated] ... opinions as to medical matters." *Id.* (citations omitted).

■ This court reviews de novo whether a claim is well grounded. *King v. Brown*, 5 Vet.App. 19, 21 (1993). The appellant has presented medical evidence which tends to show that his protective reaction sensation was lessened or totally compromised in the hand to which he suffered the saw injury. This evidence creates the possibility that the appellant's saw injury was a secondary result of his service-connected hand injury. Accordingly, we find that, as a matter of law, the appellant presented a well-grounded claim.

■ Where an appellant has presented a well-grounded claim, the VA has a duty to assist a veteran develop that claim. 38 U.S.C. § 5107; 38 C.F.R. § 3.159 (1993);

*Littke v. Derwinski*, 1 Vet.App. 90 (1990). This duty is neither optional nor discretionary. *Id.* at 92. The duty to assist includes, in an appropriate case, the duty to conduct a thorough and contemporaneous medical examination. 38 C.F.R. § 3.326 (1993); *Green v. Derwinski*, 1 Vet.App. 121, 123 (1991); *Lineberger v. Brown*, 5 Vet.App. 367, 369 (1993); *Waddell v. Brown*, 5 Vet.App. 454 (1993). This medical examination must consider the records of prior medical examinations and treatment in order to assure a fully informed examination. 38 C.F.R. § 3.326; *Green*, 1 Vet.App. at 123; *Lineberger*, 5 Vet. App. at 369; *Waddell*, 5 Vet.App. 454.

However, no such examination was undertaken in this case. The net result of this failure to assist the appellant is that the Board's conclusion that "[t]here is no evidence showing that a lack of feeling in the right wrist or hand played a significant role in the injury to the right wrist ..." is a self-fulfilling prophesy as long as the duty to assist is not carried out. Accordingly, we vacate the Board's decision, and remand this matter for further development and readjudication consistent with this opinion.

### B. Reimbursement of Unauthorized Medical Expenses

 In order to be entitled to reimbursement for medical expenses incurred without prior authorization from the VA, certain requirements must be met. The requirements include the following: (1) the care must be rendered in a medical emergency; and (2) the services must be rendered (A) for a service-connected disability, or (B) for a non-service-connected disability which aggravates a service-connected disability, or (C) for any disability of a veteran who has a permanent, service-connected disability, rated totally disabling. 38 U.S.C. §§ 1728(b)(1)–(2); 38 C.F.R. § 17.80 (1993). The Board found that while the services for which the appellant sought reimbursement were rendered in a medical emergency, they were not related to a service-connected disability, aggravation of a service-connected disability, or a permanent, service-connected disability, rated totally disabling.

Specifically, the Board found that the mechanical saw injury to the appellant's right wrist was not service connected, and thus the services for which the appellant sought reimbursement were not related to a service-connected disability. However, since the Board failed in its to duty assist the appellant regarding his claim that the mechanical saw injury was service connected, we also hold that the Board's adjudication of the appellant's entitlement to reimbursement of unauthorized medical expenses cannot stand.

### C. Increased Rating

 In assessing the appellant's entitlement to reimbursement for unauthorized medical expenses, the Board found that the mechanical saw injury did not aggravate or increase the appellant's service-connected disability rating to permanent, total disability. However, the record does not contain any medical opinion or evidence on these issues. The Board decided these matters without referring to any medical evidence in the record, or providing an examination to evaluate the extent of the appellant's hand disability after the mechanical saw injury.

The Court finds that the Board has thus failed to execute its duty to assist. As stated previously, the VA has a duty to assist a veteran develop a well-grounded claim. 38 U.S.C. § 5107(a); 38 C.F.R. § 3.159; *Littke, supra.* When a claimant submits a well-grounded claim for an increased rating, such as here, a current medical evaluation is necessary. *See Proscelle v. Derwinski*, 2 Vet. App. 629, 639 (1992). In this instance, the Board conducted no medical examination, yet reached the conclusion that the appellant's service-connected injury was neither aggravated nor rendered permanently and totally disabling by the mechanical saw injury. Without the prior medical evaluation required here by the duty to assist, this conclusion is arbitrary and cannot stand.

### D. Other claims

In his prayer for relief, the appellant's representative requests the Court (1) to grant benefits for the mechanical saw injury; (2) to grant a 70% evaluation for the appellant's service-connected right hand; and (3)

to grant service connection for a psychiatric disability, currently diagnosed as conversion reaction, as secondary to the appellant's service-connected disability. Counsel for the appellant misunderstands the extent of this Court's jurisdiction. This is a court of review, not of first impression. 38 U.S.C. § 7261(a)(3)(A)–(D). The Court does not provide de novo consideration of a particular claim or grant benefits. *Id.* Rather, the role of this Court, among other duties, is to conduct a review of the record to ascertain whether any error has been committed by the Board. *Id.; see* 38 U.S.C. § 7252. Accordingly, we decline to pass on these additional matters. Finally, the Court notes that pages 12, 21, 53, and 54 of the record on appeal present incomplete documents.

### III. Conclusion

Having reviewed the record, the appellant's brief, and the Secretary's motion for summary affirmance, the Court vacates the December 9, 1991, decision of the Board of Veterans' Appeals, and remands the matter for further development, readjudication, and further proceedings consistent with this opinion.