**Denny R. SLATER, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–713.

United States Court of Veterans Appeals.

July 11, 1996.

Robert L. Nelson, Michael P. Horan and William S. Mailander were on the brief, Washington, DC, for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Rudrendu Sinhamahapatra were on the brief, Washington, DC, for appellee.

Before KRAMER, FARLEY, and STEINBERG, Judges.

FARLEY, Judge:

This is an appeal from a May 16, 1994, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for arthritis of the cervical spine. The Board also noted that a back disorder claim was pending before the regional office (RO) and referred to the RO claims for service connection for knee disorders and for a left hip disorder, all of which were claimed to be secondary to a service-connected ankle condition. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the BVA decision.

## I.

The appellant served in the U.S. Army from November 1970 to November 1973. Record (R.) at 20. His induction examination listed his spine as normal. R. at 24. The appellant complained of a stiff neck in October 1972, and the impression was muscle strain. R. at 44. In January 1973, the appellant fractured the medical malleolus of his left ankle, apparently from a fall on ice. The break was repaired in surgery. R. at 47; *see* R. at 92.

In June 1973, he again complained of a stiff neck, and also complained of a sore throat. R. at 59. In July 1973, the appellant was diagnosed with and treated for mononucleosis. R. at 71, 73. On a July 1973 report of medical history, he did not report any problems with his neck. R. at 75–76. His separation examination reported that his spine was normal, although a one-centimeter node in the cervical area and "multiple inguinal lymphadenopathy" were noted. R. at 77. Lymphadenopathy is a "disease of the lymph nodes." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 966 (28th ed. 1994). However, in the section to report any defects or diagnoses, the examiner wrote "none," although he recommended that the appellant "follow" his mononucleosis. R. at 78. The VA granted the appellant service connection for a healed left ankle fracture, rated as 10% disabling in April 1974. R. at 101.

In July 1990, the appellant's representative stated that the appellant wanted to amend a pending claim for an increased rating for the ankle condition to include, inter alia, a claim for service connection for "a neck condition which he was treated for while on active duty in the military." R. at 172. A VA examination was performed in September 1990, and the doctor noted that the appellant had a neck strain in 1972 and that he "wore a neck support [for] 3 [weeks and] ... now has pain at base of neck [when] turning [his] head." R. at 176. An x-ray of the cervical spine revealed "[d]egenerative change with narrowing of the intervertebral foramina." R. at 178. The VA doctor diagnosed arthritis of the neck. R. at 177.

The RO requested that the appellant submit all reports of medical treatment in the past year. R. at 188. Most of the records submitted by the appellant in response concerned other disabilities. However, a May 1990 MRI of the cervical spine revealed "degenerative disc changes C5–6 and 6–7 levels with associated bony spondylosis and disc bulge most prominent at the C5–6 level, eccentric to the right." R. at 210. A June 1990 report from a Dr. Eyster noted that the appellant was

> continuing to have some symptomatology in his neck and lower back.... I am going to give him a 5% impairment rating to the body as a whole as a result of these degen[erative] changes in his neck and lower back that have been aggravated by his recent activities. I think that but for the pre-existing degen[erative] change he would not have the symptoms he is having now.

R. at 164.

In February 1991, the RO denied service connection for, inter alia, degenerative arthritis of the cervical spine, stating:

> The veteran was seen during military service for neck problems, however, the available evidence fails to show any chronic disability incurred or aggravated during military service and no problems manifesting themselves within the first year following service. The current findings regarding pain and degenerative arthritis of the

cervical spine are too remote from military service to be considered service connected. R. at 254. In August 1991, the appellant's representative filed a Notice of Disagreement (NOD). R. at 269.

The appellant submitted a number of records from Dr. Paul B. Glynn, which reveal that he treated the appellant for thoracic spine, cervical spine, and shoulder pain sporadically from July 1990 through June 1991. R. at 290–96. In October 1991, the appellant filed a VA Form 1–9, Appeal to Board of Veterans' Appeals, in which he stated that he was treated for a neck strain in October 1972 and related the following:

> [A]n injury was incurred on that date, requiring the use of a cervical brace over an extended time. [Nine months] later again in service I was seen for neck problems—at neither time was neck x-rayed to determine if problems were more severe than strained muscles. Initial injury was sustained from a fall from the back of a truck. I was discharged from service before any chronicity may have been noted on record.
>
> I further contend that arthritis is the result of a direct injury no matter the time period between injury and the onset of arthritis in area of that injury.

R. at 306. In February 1992, the RO denied the appellant's claim again, stating that the newly submitted evidence did not show a chronic cervical spine disability during service or within one year after discharge. R. at 309–10.

In May 1993, the BVA remanded the appellant's cervical spine claim to the RO. The BVA instructed the RO to have an orthopedist review the appellant's claims folder, examine him, and "provide an opinion regarding any degenerative changes or other pathology found to have occurred. An opinion should be expressed as to whether or not it is felt that any neck disability is the result of difficulties experienced in service." R. at 474. The VA examination was conducted on July 30, 1993, and the doctor stated that the appellant first injured his back "in April 1972 when he fell from the back of an army truck landing on asphalt. Impact was main-

ly on the shoulders and neck." R. at 512. The doctor stated that the appellant

> seems to be clinically limited in range of motion of his c[ervical] spine, essentially in extension and in lateral bending....
>
> Review of the x-rays [reveals] ... minor changes of the c-spine in C5 and C6....
>
> I do not see any relation between the ankle injury, the low back and the c-spine arthrosis.

R. at 515. On September 2, 1993, the RO denied service connection for, inter alia, the cervical spine condition, stating: "The current findings fail to provide any basis to relate problems with the cervical spine ... to the knee disability." R. at 518.

In a November 1993 statement, the appellant's representative wrote:

> The veteran does not claim his ankle condition caused his cervical spine condition. He does state his ankle disability is causing aggravation to his back, hip, and legs due to his compensating gait.
>
> The remand examiner stated "I do not see any relationship between the ankle injury, the low back, and cervical arthr[osis]." It seems as though the rating official focused on this statement as a reason to deny the claim....
>
> We believe the claimed condition and its cause was either forgotten, overlooked, or ignored.

R. at 532.

In May 1994, the BVA held that the appellant's claim for service connection of his cervical spine condition was not well grounded. R. at 7–8. The Board cited *Grottveit v. Brown,* 5 Vet.App. 91 (1993), and noted that the appellant was treated for muscle strain in October 1972 and that a September 1990 VA examination established that he had arthritis of the cervical spine. R. at 9. The Board continued:

> However, the veteran has yet to adequately supply evidence which addresses the issue of medical causation. A private treatment report of June 29, 1990, does make reference to aggravation of "preexisting degen[erative] change[s of the neck]"... But such evidence only suggests that the veteran's arthritis predates

an injury to his lower back in the spring of 1990; it falls considerably short of causally linking his degenerative changes to an injury allegedly incurred nearly twenty years earlier. . . .

Without the requisite medical evidence explicitly linking the veteran's claimed disorder to an in[-]service injury, his claim is not well grounded, and no additional assistance on the part of the VA is invoked. *Ibid.*

## II.

■ There is an initial threshold which a veteran must pass in order to obtain VA benefits, and in order to trigger VA's duty to assist; the veteran must "submit[ ] evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). "A well[-]grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). In *Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), the Court stated:

> [I]n order for a [service-connection] claim to be well grounded, there must be competent evidence of current disability (a medical diagnosis) . . .; of incurrence or aggravation of a disease or injury in service (lay or medical evidence) . . .; and of a nexus between the in-service injury or disease and the current disability (medical evidence). . . .

(Citations omitted.) Where medical evidence is required, it must be "to the effect that the claim is 'plausible' or 'possible.'" *Grottveit,* 5 Vet.App. at 93. The Court reviews whether a well-grounded claim has been submitted, a matter of law, under the de novo standard of review. *Grottveit,* 5 Vet.App. at 92.

■ The Court agrees with the BVA that the appellant has not provided sufficient medical evidence of a nexus between the in-service injury and his current cervical spine condition. In his June 1990 letter, Dr. Eyster stated: "I think that but for the pre-existing degen[erative] change [the appellant] would not have the [back and neck]

symptoms he is having now." R. at 164. However, as the Board noted, Dr. Eyster did not opine as to when the preexisting degenerative change originated, and since the letter was written almost 18 years after the appellant was discharged, it may have originated well after he left service. Further, Dr. Eyster's use of the term "degenerative" does not suggest that the arthritis of the cervical spine was caused by a trauma, such as the asserted fall from the truck in 1972. Therefore, this evidence is not sufficient to render the appellant's claim well grounded, and the Court must affirm the BVA decision.

## III.

The appellant next advances the argument that "Congress specifically authorized the Secretary to relieve claimants from [the well-grounded claim] requirement in section 5107(a) and the Secretary has done so in this case by authorizing an examination in May 1993." Appellant's Brief (Br.) at 13. In the appellant's view, this Congressional grant of authority is contained in the first sentence of § 5107(a), which states: "Except when otherwise provided by the Secretary in accordance with the provisions of this title, a person who submits a claim for benefits . . . shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." As for the Secretary's exercise of that authority, the appellant points to 38 C.F.R. § 3.326 (1995), which provided at the time the case was before the Board, in pertinent part, as follows:

> (a) Where the reasonable probability of a valid claim is indicated in any claim for disability compensation or pension, . . . a [VA] examination will be authorized. . . .

> (b) "Reasonable probability" may be concluded from the facts of the situation including medical and lay evidence and from the observations of the rating board made upon personal appearance by the claimant before it. The term "reasonable probability" will be interpreted liberally to permit simultaneous development of evidence including requests for examinations and for service records.

The appellant concludes that the "Secretary has 'otherwise provided,' [and] therefore, in accordance with title 38, that Mr. Slater is not required to satisfy the well-grounded claim requirement of 38 U.S.C.[ ] § 5107(a) as a precursor to the BVA's compliance with regulations which require it to remand the case to the [RO] for compliance with the VA examination ordered in May 1993." Br. at 14–15. Although the Secretary has, during the pendency of this appeal, adopted an amendment to § 3.326 to "clarify" that it applies only after a well-grounded claim has been submitted, because this amendment is arguably "less favorable" to the claimant, the regulation in effect at the time of the Board's decision will be applied. *Lasovick v. Brown,* 6 Vet.App. 141, 151 (1994).

The Court holds that the "reasonable probability" language of 38 C.F.R. § 3.326, consistent with this Court's jurisprudence, applies only where the well-grounded claim requirement of 38 U.S.C. § 5107(a) has been fulfilled. *See Caluza, supra* (specifying elements of a well-grounded claim for service connection); *see also Grottveit,* 5 Vet.App. at 93; *Murphy,* 1 Vet.App. at 81. We have consistently held that before any duty to assist attaches, the appellant must present a well-grounded claim. *See, e.g., Gregory v. Brown,* 8 Vet.App. 563, 568 (1996) ("The submission of a well-grounded claim is 'a prerequisite to the triggering of the duty-to-assist obligation under [38 U.S.C. § 5107(a) ].' ") (quoting *Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991)); *Murphy,* 1 Vet.App. at 81–82.

■ That certain exceptions have been provided by the Secretary to excuse a claimant from the need to submit evidence fulfilling all of the requirements for a well-grounded claim, *see Caluza, supra* (nexus-to-service "requirement may be satisfied by a presumption that certain diseases manifesting themselves within certain prescribed periods are related to service"), does not mean that any claimant who does not fulfill these requirements is entitled to the duty to assist. *See, e.g.,* 38 C.F.R. § 3.307 (1995) (presumptive service connection for chronic, tropical, or prisoner-of-war related disease, or disease associated with exposure to certain herbicide agents); 38 C.F.R. § 3.309 (1995) (diseases subject to presumptive service connection). Whether or not a VA examination should be conducted under 38 C.F.R. § 3.326 is an issue that arises only where a claim has already been determined to be well grounded. *See Caffrey v. Brown,* 6 Vet.App. 377, 381 (1994) (citing § 3.326 after stating that "VA has a duty to assist a veteran *who submits a well-grounded claim* ") (emphasis added); *Schroeder v. Brown,* 6 Vet.App. 220, 224–25 (1994); *Lineberger v. Brown,* 5 Vet. App. 367, 369 (1993), *appeal dismissed,* 29 F.3d 645 (Fed.Cir.1994).

The appellant also argues that a remand is warranted in this matter due to the holding of this Court in *Robinette v. Brown,* 8 Vet. App. 69, 77–79 (1995). Br. at 18–19. In *Robinette,* the Court remanded the matter to enable the Secretary to fulfill a duty under 38 U.S.C. § 5103(a) to notify an appellant of potentially probative evidence where a "veteran's statement of what his physician told him put the Secretary on notice of the likely existence of competent medical evidence that would, if true, be relevant to, indeed necessary for, a full and fair adjudication of the claim." *Robinette,* 8 Vet.App. at 77. Here, however, the record is devoid of any such statement, and this is not a case of an incomplete application under section 5103(a) and *Robinette, supra.*

## IV.

Finally, the appellant argues that he has raised a claim for a total disability rating based on individual unemployability (TDIU) which VA has failed to address, and that the Court should remand for such a claim to be adjudicated. Br. at 16–17. However, in *Isenbart v. Brown,* 7 Vet.App. 537, 541 (1995), the Court held that in order for "appellate review [to be] initiated," the "language contained in the NOD [must] sufficiently encompass[ ] the RO's failure to adjudicate the TDIU claim." In this case, the appellant's NOD addressed the cervical spine arthritis claim and claims for service connection for a left hip condition, spondylolisthesis, and lumbosacral strain. R. at 269. It can in no way be construed as expressing disagreement

with the failure of the RO to address a TDIU claim.

## V.

Upon consideration of the record, the appellant's briefs, and the Secretary's brief, the Court holds that the appellant has not demonstrated that the Board committed either factual or legal error which would warrant reversal or remand. *See Gilbert v. Derwinski,* 1 Vet.App. 49 (1990); *see also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed.Cir.1990). Accordingly, the May 16, 1994, decision of the Board of Veterans' Appeals is AFFIRMED.