William J. HENNESSEY, Jr., Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–1233.

United States Court of Veterans Appeals.

Nov. 15, 1994.

David M. Dorsen, Washington, DC, was on the pleadings, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and R. Randall Campbell, Deputy Asst. Gen. Counsel, Washington, DC, were on the pleadings, for appellee.

Before KRAMER, IVERS, and STEINBERG, Judges.

IVERS, Judge, filed the opinion of the Court, in which STEINBERG, Judge, joined. KRAMER, Judge, filed a dissenting opinion.

IVERS, Judge:

William J. Hennessey, Jr., appealed the July 13, 1992, decision of the Board of Veterans' Appeals (BVA) denying entitlement to payment or reimbursement of unauthorized medical expenses incurred in connection with hospitalization for cardiac coronary bypass graft surgery at Yale–New Haven Hospital from July 19 to July 28, 1989. *William J. Hennessey, Jr.,* BVA 92-—— (July 13, 1992). On April 19, 1994, the Court issued a single-judge memorandum decision reversing the July 13, 1992, BVA decision. On July 24, 1994, a panel of the Court (with Judge Steinberg dissenting) denied panel review of the April 19, 1994, decision.

On August 10, 1994, the Secretary filed a motion for review by the Court en banc. After construing the motion "as seeking full Court review of the panel's denial of review," the Court granted the motion as so construed, vacated the panel order and the memorandum decision, and assigned the case to the panel for consideration. *Hennessey v. Brown,* 7 Vet.App. 17 (1994) (en banc). The Court has jurisdiction under 38 U.S.C. § 7252(a). For the reasons set forth below, we reverse in part and vacate in part the July 1992 decision of the BVA and remand the case for readjudication consistent with this opinion.

### I. Factual Background

The appellant had active service in the United States Army from March 15, 1943, to May 5, 1943. R. at 115. At some point which is not clear from the record on appeal, he was rated permanently and totally disabled due to a service-connected schizophrenic condition, undifferentiated type (100% disabling). *See* R. at 141.

In a May 24, 1989, letter, a private physician, Dr. Donald S. Ruffett, with the Hartford Cardiology Group, P.C., recommended that the appellant undergo coronary angiography. R. at 49. On May 25, 1989, the appellant's service representative contacted the West Haven, Connecticut, VA Medical Center (VAMC) in an effort to seek treat-

ment for an ongoing cardiac condition. R. at 21. The appellant was admitted to the West Haven VAMC on an elective basis for a cardiac catheterization (R. at 52, 55–57, 64, 71), and he was diagnosed with severe coronary artery disease with triple vessel disease and preserved left ventricular ejection fraction (R. at 52, 55). In a June 22, 1989, VA progress note, a VA physician noted that the appellant was "prob[ably]" a good candidate for coronary artery bypass graft surgery. R. at 79. According to a VAMC clinical record, it was recommended that the appellant undergo cardiac coronary artery bypass graft surgery "in the near future." R. at 56. A VA physician concluded that the appellant's "[o]verall prognosis was good, given that the patient would have coronary artery bypass graft in the near future." R. at 57. According to a June 23, 1989, VA progress note, the appellant was informed of this recommendation, and he then elected to have the surgery performed at Yale–New Haven Hospital instead of the West Haven VAMC or another VA facility. R. at 53.

The appellant was admitted to Yale–New Haven Hospital on July 19, 1989, the elective coronary artery bypass graft surgery was performed on July 20, and he was discharged and transferred to the West Haven VAMC on July 28. R. at 94–96, 98, 107. According to a September 20, 1989, VA memorandum, the appellant "was offered a choice of going to either another VA hospital with lengthy waiting period or utilizing his own Medicare insurance for cardiac surgery at Yale without any cost to [the West Haven VAMC]." R. at 124.

In August 1990, the appellant submitted a claim for payment of the cost of medical services provided for his surgery totalling $29,302.99. R. at 130; see also R. at 146. On October 1, 1990, VA denied the appellant's claim. R. at 137–38. On June 21, 1991, the appellant's service representative wrote to a VA regional office (RO), asking that statements be taken from the surgeons who had transferred the appellant from the West Haven VAMC to Yale–New Haven Hospital. R. at 151. In a July 10, 1991, statement, the appellant's service representative also wrote that the West Haven VAMC

had a contract with the Yale–New Haven Hospital under which Yale–New Haven Hospital would perform surgical procedures that were not available at the West Haven VAMC. R. at 152. On July 13, 1992, the Board denied the claim for payment or reimbursement for the medical services provided in connection with the appellant's hospitalization and surgery at Yale–New Haven Hospital from July 19 to July 28, 1989. *Hennessey,* BVA 92–––––, at 6.

## II. Analysis

Two questions are presented on this appeal: whether the appellant was eligible for VA payment of unauthorized medical expenses and, alternatively, whether those services were authorized by VA.

We will initially address the issue that was the focus of the BVA decision on appeal, whether the appellant was eligible for reimbursement of previously unauthorized medical services. The statute regarding reimbursement of unauthorized medical services provides:

(a) The Secretary may, under such regulations as the Secretary shall prescribe, reimburse veterans entitled to hospital care or medical services under this chapter for the reasonable value of such care or services (including travel and incidental expenses under the terms and conditions set forth in section 111 of this title), for which such veterans have made payment, from sources other than the Department where—

(1) such care or services were rendered in a medical emergency of such nature that delay would have been hazardous to life or health;

(2) such care or services were rendered to a veteran in need thereof (A) for an adjudicated service-connected disability, (B) for a non-service-connected disability associated with and held to be aggravating a service-connected disability, (C) for any disability of a veteran who has a total disability permanent in nature from a service-connected disability, or (D) for any illness, injury, or dental condition in the case of a veteran who (i) is a participant in a vocational rehabilitation program (as defined in

section 3101(9) of this title), and (ii) is medically determined to have been in need of care or treatment to make possible such veteran's entrance into a course of training, or prevent interruption of a course of training, or hasten the return to a course of training which was interrupted because of such illness, injury, or dental condition; and

　(3) Department or other Federal facilities were not feasibly available, and an attempt to use them beforehand would not have been reasonable, sound, wise, or practical.

38 U.S.C. § 1728(a).

Under 38 C.F.R. § 17.80 (1993), promulgated pursuant to 38 U.S.C. § 1728, payment or reimbursement of expenses for care not previously authorized in a non-VA hospital may be made under the following circumstances:

　(a) *For veterans with service[-]connected disabilities.* Care or services not previously authorized were rendered to a veteran in need of such care or services:

　(1) For an adjudicated service-connected disability;

　(2) For non[-]service-connected disabilities associated with and held to be aggravating an adjudicated service-connected disability;

　(3) For *any disability* of a veteran who has a total disability permanent in nature resulting from a service-connected disability . . . ;

　(4) For any illness, injury or dental condition in the case of a veteran who is participating in a rehabilitation program under 38 U.S.C. ch. 31 and who is medically determined to be in need of hospital care or medical services for any of the reasons enumerated in § 17.48(j); and

　(b) *In a medical emergency.* Care and services not previously authorized were rendered in a medical emergency of such nature that delay would have been hazardous to life or health[;] and

　(c) *When Federal facilities are unavailable.* VA or other Federal facilities were not feasibly available, and an attempt to use them beforehand or obtain prior VA authorization for the services required would not have been reasonable, sound, wise, or practicable, or treatment had been or would have been refused.

*See Schroeder v. Brown,* 6 Vet.App. 220, 225 (1994); *Paris v. Brown,* 6 Vet.App. 75, 76–77 (1993); *Hayes v. Brown,* 6 Vet.App. 66, 67–68 (1993); *Smith v. Derwinski,* 2 Vet.App. 378, 379 (1992). The VA regulation governing whether a veteran may receive authorization for treatment at a public or private hospital other than a VA or federal facility states that a VA facility may be considered as "not feasibly available" when "the urgency of the applicant's medical condition, the relative distance of the travel involved, or the nature of the treatment required makes it necessary or economically advisable to use public or private facilities." 38 C.F.R. § 17.50c (1993). Additionally, 38 C.F.R. § 17.89 (1993) provides that "[n]o reimbursement or payment of services not previously authorized will be made when such treatment was procured through private sources in preference to available Government facilities."

The appellant was rated permanently and totally disabled due to service-connected schizophrenia. *See* R. at 141. Therefore, the relevant statutory and regulatory provisions are 38 U.S.C. § 1728(a)(2)(C) and 38 C.F.R. § 17.80(a)(3), and the appellant's entitlement to reimbursement for previously unauthorized medical services hinges on whether such "services were rendered in a medical emergency of such nature that delay would have been hazardous to life or health" and VA or other federal facilities were not "feasibly available." 38 U.S.C. § 1728(a)(1), (a)(3); 38 C.F.R. § 17.80(b), (c).

In this case, however, the Board has not adequately developed the record, thus frustrating effective judicial review. *See Ardison v. Brown,* 6 Vet.App. 405, 407 (1994) (BVA failure to develop record by breaching duty to assist frustrated effective judicial review). It is not clear from the record whether the appellant's condition was of such severity that it qualified as a "medical emergency of such nature that delay would have been hazardous to life or health." 38 U.S.C. § 1728(a)(1); 38 C.F.R. § 17.80(b). "One of

the cardinal principles of statutory interpretation is that the words in a statute 'should be given their common and approved usage.'" *Brooks v. Brown*, 5 Vet.App. 484, 486 (1993) (quoting 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.01 (Sands 4th ed.)). An emergency is "a sudden, generally unexpected occurrence or set of circumstances demanding *immediate* action." WEBSTER'S NEW WORLD DICTIONARY, THIRD COLLEGE EDITION 444 (1988) (emphasis added).

Although the appellant, as most individuals, would have wanted to resolve his medical condition immediately, no document in the record indicates that the appellant required the surgery immediately. Indeed, several medical records indicate that the surgery performed was elective. R. at 95, 98, 107. In its July 1992 decision, the Board stated:

> The July 1989 treatment at Yale New Haven Hospital was not under such emergent circumstances that delay would have been hazardous to the veteran's life or health. The heart operation was performed on an elective basis, was routinely scheduled, and occurred almost a month after the cardiac catheterization which led to the recommendation for surgery. Treating physicians who saw the veteran during the June 1989 VA admission did not assess the heart condition as requiring an immediate operation, but only surgery in the near future which could have been directly provided by the VA.

*Hennessey*, BVA 92-——, at 5-6. Nevertheless, the appellant had been diagnosed with *severe* coronary artery disease with triple vessel disease and preserved left ventricular ejection fraction. R. at 52, 55. In addition, according to a June 24, 1989, West Haven VAMC clinical record, cardiac coronary bypass graft surgery was recommended *"in the near future."* R. at 56 (emphasis added). Indeed, in that same record, a VA physician stated that the appellant's "[o]verall prognosis was good, *given that the patient would have coronary artery bypass graft in the near future.*" R. at 57 (emphasis added). However, it is unclear what the physician meant by "in the near future."

The meaning of the phrase "in the near future" also bears significantly on whether a VA facility was "feasibly available." According to a post-surgery VA memorandum, the appellant was faced with a choice of going to either another VA hospital with a "lengthy waiting period" or a private or public hospital. R. at 124. A pre-surgery VA clinical record did not indicate whether or not there would be a lengthy waiting period for the surgery at a VA hospital. R. at 53. At the very least, the post-surgery VA memorandum raises a question which the Board did not adjudicate in its July 1992 decision: whether the "lengthy waiting period" was so lengthy that a VA hospital was not "feasibly available" in order to perform the recommended surgery "in the near future." Indeed, the record presently before us provides no plausible basis for the BVA's finding in its July 1992 decision that "surgery in the near future ... could have been directly provided by the VA." *Hennessey*, BVA 92-——, at 6. Consequently, we will reverse as clearly erroneous that part of the BVA decision which found, on the basis of the current record, that the surgery could have been directly provided by VA in the near future. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). (Our reversal does not prevent the Board from making a new finding on this question based on a further developed record.) In addition, because the record is ambiguous as to the precise meaning of certain terms that have a direct bearing on whether the appellant's surgery might qualify for reimbursement, we will remand the case to the Board for further evidentiary development as to whether the appellant's condition constituted an emergency within the meaning of the applicable law and regulation; as to the meaning of the phrases "in the near future" and "lengthy waiting period"; and as to the significance of a need for the recommended surgery in such near future and of such a waiting period on whether a VA facility was "feasibly available" for the recommended surgery.

In his dissent, our colleague argues that all of the Board's principal findings were clearly erroneous and that the Court should itself make contrary fact determinations and order VA to reimburse the appellant for the

cost of the medical services in question. In order to warrant reversal, however, we would have to "conclude that there is no plausible basis for the BVA's decision." *Harder v. Brown,* 5 Vet.App. 183, 189 (1993). If "there can be only one permissible view of the evidence," then reversal is appropriate. *Karnas v. Derwinski,* 1 Vet.App. 308, 311 (1991). All of the Board's principal findings, except for the Board's unsubstantiated finding on the current record that the surgery could have been provided directly by VA in the near future, may have a plausible basis in the record. However, the meanings of the phrases "in the near future" and "lengthy waiting period" are ambiguous on the state of the current record. Although our dissenting colleague makes a strong argument that the record supports only one conclusion, such factfinding by the Court would preempt the appropriate function of the BVA to make the medical determinations necessary in assessing whether the appellant's condition was an emergency of such nature that delay would have been hazardous to life or health and whether no other VA facility was feasibly available. *See Butts v. Brown,* 5 Vet.App. 532, 539 (1993) (en banc) (VA and BVA possess specialized expertise in identifying and assessing medical nature of condition); *Brannon v. Derwinski,* 1 Vet.App. 314 (1991) ("Courts are better suited to acknowledge undebatable historic facts, which include statutes and regulations, than to comment on and interpret the status of medical principles.") In a recent case, the Court stated: "This Court is not generally an initial trier of facts. In appeals of BVA decisions, this Court reviews fact determinations made by the Board and does not engage in de novo factfinding." *Landicho v. Brown,* 7 Vet.App. 42, 48 (1994) (citing, *inter alia,* 38 U.S.C. § 7261(a)(4), (c), and *Gilbert,* 1 Vet.App. at 53). As the Supreme Court of the United States has stated:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged action on the basis of the record before it, the proper course, except in rare circumstances, is to remand

to the agency for additional investigation or explanation.

*Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985); *see also Occidental Petroleum Corp. v. SEC,* 873 F.2d 325, 347 (D.C.Cir.1989) ("The proper course in a case with an inadequate record is to vacate the agency's decision and to remand the matter to the agency for further proceedings."); *see also Ardison,* 6 Vet.App. at 409–10. Therefore, the appropriate remedy (except as to the one finding which we held, *supra,* to be clearly erroneous) is a remand, not a reversal as our dissenting colleague argues.

■ On remand, the Board must also adjudicate whether the appellant's surgery at the private hospital was previously authorized. The record raises two theories under which the appellant's surgery could have been previously authorized by VA. First, the appellant had argued before the Board that the West Haven VAMC had entered into a contract with the Yale–New Haven Hospital for the performance of certain medical procedures which were not available at the VA facility. *See* 38 U.S.C. §§ 1703, 8153; 38 C.F.R. §§ 17.50b, 17.50e (1993). Although the Board mentioned correspondence from the VA facility in September 1989, that correspondence addressed only whether the appellant should submit outstanding bills for payment by Medicare, not whether VA had entered into a contract with the Yale–New Haven Hospital for the performance of surgery such as the appellant's. R. at 123–24.

Second, the record indicates that the appellant had at least one conversation with physicians from the West Haven VAMC in which his various options were discussed. R. at 53. It is not clear from the record on appeal, however, whether these conversations constituted a prior, individual authorization for the performance of the coronary artery bypass graft at Yale–New Haven Hospital. *See* 38 C.F.R. §§ 17.47(b)(1), 17.50b, 17.50c, 17.50d (1993); *see also Similes v. Brown,* 6 Vet.App. 555, 557 (1994) (remanding to BVA for a determination as to whether VA physician's statement that veteran should "go to the nearest hospital" constituted prior authorization and for a determination as to

who is authorized to provide such authorization); *Smith,* 2 Vet.App. at 378–79 (holding that VA physician's advice that arrangements had been made for private hospital treatment was "not the specific type of authorization contemplated by the regulation").

Therefore, on remand, the Board must also fully develop the evidentiary record on these questions and issue a decision supported with reasons or bases. *See Paris,* 6 Vet.App. at 77.

## III. Conclusion

Accordingly, we REVERSE, as clearly erroneous on the current record, the finding in the Board's July 1992 decision that the necessary surgery could have been directly provided by VA in the near future, VACATE the remainder of that decision, and REMAND the case for readjudication consistent with this opinion.

KRAMER, Judge, dissenting:

I would reverse the Board of Veterans' Appeals (BVA) decision because the BVA's factual findings regarding the requirements for and preclusion of reimbursement under 38 C.F.R. §§ 17.80(b), (c), 17.89 (1993) (quoted in the majority opinion, *ante* at 146), were clearly erroneous. *See Gilbert v. Derwinski,* 1 Vet.App. 49 (1990); 38 U.S.C. § 7261(a)(4). As I would decide this matter based on the assumption that the treatment at Yale–New Haven Hospital was unauthorized, the other issues which the majority would remand to the BVA need not be addressed.

While the BVA did not address whether the appellant needed the cardiac coronary bypass graft surgery (surgery), 38 C.F.R. § 17.80(a), this need has not been disputed by either the BVA or the Secretary. Furthermore, the BVA acknowledged that the appellant has a total service-connected disability which is permanent in nature (schizophrenia) under 38 C.F.R. § 17.80(a)(3). The BVA found, however, that: (1) the surgery was not rendered under such emergent circumstances that delay would have been hazardous to life or health (as required by 38 C.F.R. § 17.80(b)); (2) VA facilities were feasibly available (their unavailability being a prerequisite for reimbursement pursuant to

38 C.F.R. § 17.80(c)); and (3) the appellant chose to receive the treatment at a non-VA facility in preference to available VA care (thus precluding reimbursement under 38 C.F.R. § 17.89). In my view, all three of these findings are clearly erroneous.

The undisputed facts are as follows: The appellant suffered a myocardial infarction and subsequent angina in November 1983, and an angiography performed at that time revealed a completely obstructed right coronary artery and moderate disease in the left anterior descending and left circumflex arteries (three vessel disease). R. at 13–15. He underwent yearly exercise stress tests which were negative until May 1988, when his test results were described by the Dr. Donald S. Ruffett as "borderline." In May 1989, the appellant had what Dr. Ruffett described as a "markedly positive" exercise stress test. R. at 22. Shortly after that test, Dr. Ruffett wrote a letter stating that he strongly recommended a coronary angiography for the appellant "because of a severely abnormal treadmill test, which has changed significantly from his previous test." R. at 50.

On June 20, 1989, the appellant, who was 65 years of age at the time, went to West Haven VA Medical Center with a complaint of exertional angina following his recent exercise stress test. R. at 22, 52, 55. On that date, the appellant noted an increase in his anginal symptoms and was admitted for elective cardiac catheterization. R. at 55. The results of the cardiac catheterization performed on June 22, 1989, as reported by Dr. C. Arnold, were as follows:

The patient had a normal left main. His left anterior descending had a 40–50% proximal stenosis [narrowing or stricture] and an 80% stenosis of the takeoff of a moderate sized diagonal branch. The AV groove circumflex had a 90% irregular lesion between a large obtuse marginal and a smaller obtuse marginal 2. The obtuse marginal one had a significant 70% proximal lesion, the obtuse marginal two had a 40% mid-lesion. The patient has a dominant RCA [right coronary artery] with an 80% proximal stenosis followed by a total

mid-occlusion [complete obstruction of the artery].

R. at 56. A schema of this described condition, showing blockages, drawn by Dr. Arnold, is reproduced as an appendix. *See* R. at 56, 80 (description and schema of blockages); *Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (suit challenging restrictions on speech and press on military reservation; appendix of photographs of entrances to reservation and of respondents distributing pamphlets); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (reversal of criminal conviction because of televising and broadcasting of trial; appendix of seven photographs showing activities of camera operators). Based on these findings, the diagnosis was *"severe* coronary artery disease with triple vessel disease." R. at 55 (emphasis added). Dr. Arnold recommended that the appellant undergo cardiac coronary artery bypass graft surgery "in the near future" (R. at 56) and stated that the "[o]verall prognosis was good, given that the patient would have [the surgery] in the near future" (R. at 57). At that time, the appellant was offered a choice of either "going to another VA hospital with a lengthy waiting period" or to Yale–New Haven Hospital. R. at 124. At his choosing, the surgery was performed at Yale–New Haven Hospital on July 20, 1989. R. at 53, 141.

Factual findings by the BVA are subject to the "clearly erroneous" standard of review. *See Harrison v. Principi,* 3 Vet.App. 532 (1992); *Gilbert, supra.* In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert,* 1 Vet.App. at 53.

The first inquiry is whether the BVA's finding that the surgery was not performed in a medical emergency had a plausible basis in the record. Given the appellant's history at the time the surgery was performed which indicated that: (1) he was 65 years of age; (2) his coronary disease extended to three vessels; (3) his condition was diagnosed as "severe"; (4) he had two lesions (40–50% and 80%) in his anterior descending vessel, the first being high in vessel, and the second at mid-level (*see* R. at 80); and (5) he had exercise-induced angina which had significantly increased in severity;[1] and given Dr. Arnold's uncontroverted expert opinion that the appellant's prognosis was good provided that he had the surgery "in the near future," the BVA's finding that the surgery was not performed under emergent circumstances such that delay would have been hazardous to life and health had no plausible basis in the record and is, therefore, "clearly erroneous." *See Gilbert,* 1 Vet.App. at 53.

The second inquiry is whether the BVA's finding that VA facilities were feasibly available had a plausible basis in the record. The only alternative to having surgery "in the near future" at Yale–New Haven Hospital was to wait for the surgery at a VA facility with a "lengthy waiting period." (I note that the BVA, in determining that a VA facility was available to the appellant, stated only that there was a "waiting period," apparently ignoring the modifying word "lengthy." R. at 8.) Where, as here, the urgency of the appellant's condition required surgery "in the near future" and a VA facility was not available without a "lengthy waiting period," it is uncontroverted that: (1) the nature of the appellant's medical condition and the nature of the surgery required to treat that condition made it necessary to perform the surgery at Yale–New Haven Hospital; and (2) an attempt to use or obtain prior authorization to use a Federal facility in the near future, or have treatment rendered by such facility in the near future, would have been a useless exercise which, under 38 C.F.R. § 17.80(c), "would not have been reasonable, sound, wise, or practicable, [in that it clearly would have resulted in a situation in which] treatment ... would have been refused."

---

1. MERCK MANUAL 504 (16th ed. 1992) states that the major risks of coronary artery disease are unstable angina, myocardial infarction, and sudden death. Major factors which influence prognosis include age, extent of coronary disease, and severity of symptoms, and prognosis is better in patients with mild or moderate angina than in those with severe exercise-induced angina. Lesions high in the anterior descending vessel carry a particularly high risk.

Thus, the BVA's finding that VA facilities were feasibly available had no plausible basis in the record and is, therefore, "clearly erroneous." *See Gilbert, supra.*

The final inquiry is whether the BVA's finding that the appellant chose to receive treatment at a non-VA facility in preference to available VA care had a plausible basis in the record. As the appellant could not have his surgery at a VA facility "in the near future" because no VA facilities were feasibly available, he had no choice but to receive treatment elsewhere. Thus, the BVA's finding that the appellant chose to receive treatment at a non-VA facility in preference to available VA care also has no plausible basis in the record and is, therefore, "clearly erroneous." *See Gilbert, supra.*

The Court's single-judge memorandum decision reversing the July 13, 1992, BVA decision should be sustained.

APPENDIX