**A.C. COTTON, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–694.

United States Court of Veterans Appeals.

Jan. 20, 1995.

**326**

A.C. Cotton, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Rosalind E. Masciola, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and IVERS, Judges.

NEBEKER, Chief Judge:

The appellant, A.C. Cotton, appeals from a December 14, 1992, decision of the Board of Veterans' Appeals (Board) denying him entitlement to reimbursement or payment for the cost of unauthorized medical services. On consideration of the record on appeal and the pleadings filed by the parties, the decision of the Board is vacated and this matter is remanded for further proceedings consistent with this opinion.

## I. FACTS

The appellant is a Vietnam veteran who served on active duty with the U.S. Army from June 1955 to May 1989. Record (R.) at 81. During his retirement physical examination conducted at Ireland Army Hospital in January 1989, he had an abnormal EKG. *Id.* On January 31, 1989, his treadmill stress test results were also interpreted as abnormal. In February 1989, he was hospitalized at Wright–Patterson Air Force Base for cardiac catheterization which disclosed "significant two-vessel coronary artery disease." R. at 82. At that time, his service cardiologists recommended that he be treated with medication in an attempt to reduce the blockage in his arteries. *Id.* In June 1989, after his retirement, he filed with VA a claim for service connection for his coronary artery disease. R. at 108–11. When he returned to Ireland Army Hospital for further treatment, he was referred to Dr. John D. Rhodes, a private cardiologist. Due to continued problems with angina, a subsequent cardiac catheterization was performed on August 17, 1989, at Hardin Memorial Hospital, a private facility. R. at 297–98. This examination revealed that medication had been ineffective in reducing the artery blockage. The appellant was diagnosed with "severe 3–vessel coronary artery disease along with a small mid-inferior wall myocardial infarction." R. at 297. The following day, he was transferred by ambulance to Jewish Hospital, also a private facility, in Louisville, Kentucky. He underwent five-vessel coronary bypass surgery at Jewish Hospital on August 21, 1989. R. at 150. He tolerated the procedure well and was discharged from the hospital on September 1, 1989.

By rating decision dated December 28, 1989, service connection was established for coronary artery disease with hypertension, effective June 1989, the date of the claim. R. at 116. In September 1990, the appellant submitted a claim for reimbursement or payment of unauthorized medical services, requesting VA's assistance in paying a portion of his medical expenses for the bypass surgery. R. at 140, 165–67. On January 4, 1991, he was examined by Dr. Jane Irby, a VA physician. Dr. Irby noted that his condition was "compatible with history of coronary

artery bypass graft." R. at 231–33. Additionally, no active coronary artery disease was shown. On January 16, 1991, Dr. Irby stated that, in her opinion, the appellant's admission to Jewish Hospital for bypass surgery more than two years earlier "was not an emergency" and that he could have been admitted to a VA facility instead. R. at 251. The Louisville Regional Office (RO) denied the claim for payment of his medical expenses. The appellant appealed to the Board. The Board denied the claim and this timely appeal followed.

## II. ANALYSIS

Section 1728(a), title 38, United States Code, provides that VA may reimburse veterans for medical expenses incurred in non-VA facilities where:

(1) such care or services were rendered in a medical emergency of such nature that delay would have been hazardous to life or health;

(2) such care or services were rendered to a veteran in need thereof (A) for an adjudicated service-connected disability ...; and

(3) Department or other Federal facilities were not feasibly available, and an attempt to use them beforehand would not have been reasonable, sound, wise, or practical.

All three statutory requirements must be met before reimbursement may be authorized. *See Hayes v. Brown,* 6 Vet.App. 66, 68 (1993). Here, the second requirement is clearly satisfied, as the appellant's coronary artery disease was ultimately established as service connected, with an effective date that predated his medical treatment for that disease. *Cf. Argo v. Derwinski,* 2 Vet.App. 509, 510 (1992) ("expenses of medical care or services rendered prior to the effective date of an award of service connection may not be reimbursed"). Thus, the appellant's eligibility for reimbursement of his medical expenses depends on whether (1) treatment was for a "medical emergency" and (2) VA or other Federal facilities were not "feasibly available." 38 U.S.C. § 1728(a); 38 C.F.R. § 17.80 (1994). These two requirements are interrelated. *See Hennessey v. Brown,* 7

Vet.App. 143, 147 (1994) (recommendation that coronary bypass surgery be performed in the "near future" bears significantly on whether a VA facility was "feasibly available"). A VA facility "may be considered as not feasibly available when the urgency of the applicant's medical condition, the relative distance of the travel involved, or the nature of the treatment required makes it necessary or economically advisable to use public or private facilities." 38 C.F.R. § 17.50c (1994).

█ In the decision on appeal, the Board made a factual finding that "[a]t the time of the veteran's admission to the private hospital, a medical emergency such as to preclude use of available VA medical facilities was not present." R. at 6. The Board further stated, "[A]lthough the record indicates that the veteran's condition necessitated prompt medical care, it appears that the veteran would have had adequate time in which to have the cardiac surgery performed at a VA medical facility. This is especially true since the [Louisville VA Medical Center] is located in the same city as the private hospital." R. at 8. The Court concludes that the Board has failed to provide an adequate statement of reasons or bases for its decision. *See* 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990).

█ In support of its finding that there was no medical emergency in this case, the Board noted that, at the time of his admission to Jewish Hospital, the appellant's blood pressure was 120/74, his pulse rate was 64, and he was "resting quietly in bed and in no apparent distress." R. at 8. The Board also noted that the operation was not performed until August 21, 1989, several days after his hospital admission. The medical significance, if any, of these facts is not clear from this record, as the Board's decision did not refer to any medical opinion of record addressing this issue. *See Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991) (holding that the Board may not rely on its own unsubstantiated medical opinions). Additionally, the fact that a VA medical center was located in the same city as Jewish Hospital does not provide an adequate basis for the Board's finding that a VA facility was "available" to

perform the bypass surgery. Rather, the determination of whether a VA facility was "feasibly available" must be made after consideration of such factors as the urgent nature of the appellant's medical condition and the length of any delay that would have been required to obtain the bypass surgery from a VA facility. *See* 38 C.F.R. § 17.50c. The Board also did not evaluate or discuss the statement of Dr. Irby, the VA physician who examined the appellant in 1991 and opined that his 1989 bypass surgery "was not an emergency." *Cf. Gabrielson v. Brown,* 7 Vet. App. 36, 40 (1994) (holding that the Board's statutory obligation to provide adequate reasons or bases for its findings and conclusions serves a function similar to that of cross-examination in adversarial litigation).

The record contains a February 6, 1991, statement by the appellant's cardiologist, Dr. Rhodes, that bypass surgery had been indicated "in view of the severity of his coronary disease and its life-threatening nature." R. at 312. In his June 15, 1992, letter to the RO, Dr. Rhodes stated that on August 17, 1989, cardiac catheterization of the appellant "showed severe 3–vessel coronary artery disease along with a small mid-inferior wall myocardial infarction." R. at 297. It was because of this diagnosis that the appellant was transferred by ambulance to Jewish Hospital, where he was prepared for surgery. Writing in June 1992 regarding whether it would have been reasonable to have obtained the surgery at a VA facility, Dr. Rhodes stated that

[the appellant] did seek attention initially through the military system and despite the finding of significant multivessel disease along with documented physiologically significant stenosis and continued angina, he was treated medically. In my opinion, because of the multivessel nature involved along with the physiologically evident coronary insufficiency and his increasing anginal pattern, bypass surgery was definitely indicated and felt to be indicated *on an urgent basis.*

Having worked with the Veterans' Administration in the past as a Cardiology Fellow at the University of Louisville, I felt that the amount of paperwork channels

[that he] would have had to have gone through, etc., would have precluded a timely course of management for this otherwise relatively healthy individual.

R. at 297–98 (emphasis added). In view of the foregoing, the Court concludes that the Board's decision cannot stand. If the Board continues to deny relief on remand, it must provide an adequate statement of reasons or bases for its decision. Included must be its reasons for rejecting Dr. Rhodes's conclusions that the appellant's life-threatening condition required urgent treatment and that completion of the paperwork required to obtain the necessary bypass operation in the local VA facility would have prevented timely treatment of this condition. *See Paris v. Brown,* 6 Vet.App. 75, 77 (1993); *Colvin,* 1 Vet.App. at 175.

Finally, we note that payment for emergency medical expenses for a service-connected disability may be made where "VA or other Federal facilities were not feasibly available, and an attempt to use them beforehand or obtain prior VA authorization for the services required would not have been reasonable, sound, wise, or practicable, or treatment had been or *would have been refused.*" 38 C.F.R. § 17.80(c) (emphasis added). This regulatory provision is particularly relevant in this case, where the claim for service connection for coronary artery disease was pending at the time of surgery. This issue was raised by the appellant in his appeal of the RO's rating decision, where he stated that "at the time of my operation I had been discharged from the Army for only two months, the VA had not made a determination on my case and did not make one until December 1989." R. at 253. It is unclear whether VA would have considered the appellant eligible to receive bypass surgery in a VA facility while his claim for service connection was pending. Thus, on remand, the Board must make a further factual finding as to whether the Louisville VA facility would have refused to provide the coronary bypass surgery in August 1989, under all the circumstances then prevailing. *See, e.g.,* 38 U.S.C. § 1710(a).

The appellee's motion for summary affirmance is denied. The decision of the Board

is VACATED and this matter is REMAND-ED for further proceedings consistent with this opinion. On remand, the appellant will be free to submit additional evidence. *See Quarles v. Derwinski*, 3 Vet.App. 129, 140–41 (1992).