# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-1038

FRANK L. BELLEZZA, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 25, 2002            Decided    June 4, 2002  )

*Ronald L. Smith*, of Washington, D.C., was on the pleadings for the appellant.

*Gary O'Connor*, with whom *Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Allyn L. Engelstein*, all of Washington, D.C., were on the pleadings for the appellee.

Before KRAMER, *Chief Judge*, and HOLDAWAY and GREENE, *Judges*.

HOLDAWAY, *Judge*, filed the opinion of the Court.  KRAMER, *Chief Judge*, filed an opinion concurring as to the result.

HOLDAWAY, *Judge*:  The appellant, Frank L. Bellezza, appeals a February 23, 1999, decision of the Board of Veterans' Appeals (Board) that determined that he was not entitled to payment or reimbursement by VA for the cost of previously unauthorized medical services (that is, medical services not authorized by VA before they were performed on the veteran) incurred in connection with treatment he received at Southwest Florida Regional Medical Center (Southwest Florida) from September 21 to 26, 1995.  Record (R.) at 2, 7.  The appellant and the Secretary have filed briefs, and the appellant has filed a reply brief.  This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  For the reasons that follow, the Court will vacate the Board's decision and remand the claim.

## I. BACKGROUND

The appellant served on active duty in the U.S. armed forces from February 1966 until January 1968. He was later awarded service connection for, inter alia, anxiety neurosis, and was rated 100% disabled at all times pertinent to this appeal. R. at 3, 10. On September 16, 1995, the appellant was admitted to North Collier Hospital (North Collier), where he was treated for an "[a]cute inferior wall myocardial infarction." R. at 12-13. He was subsequently transferred to Southwest Florida on September 21, 1995, "for further evaluation including cardiac catheterization." R. at 13. He was later discharged from Southwest Florida on September 26, 1995. R. at 130-31.

On September 28, 1995, Dr. Fred Wasserman, a VA physician assigned to review the appellant's claim for reimbursement of expenses for unauthorized medical care that Southwest Florida provided (a claim that was not formally filed until November 15, 1995) prepared a Report of Contact form indicating the following:

> High probability noted that emergency condition had resolved prior to transfer; without information from N.Collier Hospital, [I] am unable to assess if this period of hospitalization was for an emergency condition or if emergency condition had resolved prior to transfer."

R. at 162.

On November 20, 1995, Dr. Wasserman signed a second Report of Contact form indicating that he had reviewed the claim, and that the "[p]rofessional prerequisites of 38 C.F.R. § 17.80 [(now 38 C.F.R. § 17.120)] have not been satisfied," and stating: "Nonemer[gency] (emer[gency] had resolved prior to transfer)[;] VA facil[ity] avail[able]." R. at 170. On November 21, 1995, the Chief of the Medical Administration Service (MAS) at the Bay Pines VA Medical Center (VAMC) in Bay Pines, Florida, disapproved the claim for medical care at Southwest Florida, because "[c]are and services were not rendered in a medical emergency of such nature that delay would have been hazardous to life or health." R. at 166. The appellant filed a Notice of Disagreement as to the denial. R. at 174-75.

In December 1995, Dr. Luis Bonet, the appellant's treating physician at North Collier, filed a statement indicating that the appellant presented in the emergency room with acute myocardial infarction, that he had received treatment, and that "[w]hen his condition was judged to have improved, he was referred to a tertiary center . . . for further Dx [(diagnosis)] and Rx [(treatment)]."

2

Dr. Bonet concluded that the appellant's "condition was stabilized enough for an ambulance ride of 20 [to] 30 minutes, but not good enough for a 3[-]hour[] ride to St. Petersburg/Tampa [VAMC]," (R. at 168 (emphasis in the original)) apparently the closest VA facility.

In January 1996, Dr. Michael P. Metke, the appellant's treating physician at Southwest Florida, stated, after reviewing the medical records from North Collier, that he agreed with Dr. Bonet's opinion that North Collier was unable to provide the necessary care, and that at the earliest opportunity, Mr. Bellezza was transferred to the closest facility capable of performing a coronary angiograph and coronary artery revascularization. He further stated that "because of his unstable situation . . . [transferring the patient to] the nearest available facility to proceed with coronary angiograph and revascularization was in this patient's best interest." R. at 172. Dr. Metke later opined that the appellant had been "in a life[-]threatening situation" at the time of his transfer from North Collier to Southwest Florida (R. at 177) and that "it would have involved accepting a higher risk to the life of [the appellant] had he been required to be transported to another institution before revascularizing his heart" (R. at 180). The MAS Chief issued a Statement of the Case (R. at 182-93), and the appellant filed a Substantive Appeal to the Board (R. at 195-96).

In its February 23, 1999, decision, the Board, in denying the appellant' claim for reimbursement of medical expenses incurred at Southwest Florida before the treatment was authorized, stated:

> The regulation is clear as to the treatment for which the VA can and cannot pay or reimburse. Under 38 C.F.R. § 17.121[(2001),] only a VA physician is empowered to determine when a veteran who received emergency hospital care could have been transferred to a VA medical center or when the veteran could have reported to a VA medical center and in this case that determination has been rendered by a VA physician, who has indicated that the veteran could have been transferred to a VA facility on September 21, 1995. In view of this regulation[,] the Board finds that the private physicians' opinions have little probative value. Although the Board is sympathetic to the veteran's situation, there simply is no legal basis upon which the Board could find VA responsible for the veteran's medical treatment at Southwest Florida from September 21 to September 26, 1995. This being the case, the Board must deny the veteran's claim of entitlement to reimbursement or payment of the cost of medical treatment provided in association with private hospitalization from September 21 [to] 26, 1995, at Southwest Florida.

R. at 6. Following that decision, the appellant properly and timely filed this appeal.

## II. ANALYSIS

At the heart of this case is whether the Board correctly interpreted 38 C.F.R. §17.121 (2001). "Whether the . . . Board has properly interpreted a law or regulation is a matter which this Court reviews de novo." *Cropper v. Brown*, 6 Vet.App. 450, 454 (1994); *see also Hunt v. Derwinski*, 1 Vet.App. 292, 293 (1991). However, in doing so, "[s]ubstantial deference is given to the statutory interpretation of the agency authorized to administer the statute." *Livesay v. Principi*, 15 Vet.App. 165, 172 (2001) (en banc) (quoting *Chevron U.S.A, Inc. v. Natural Res. Def. Counsel, Inc.*, 467 U.S. 837, 844 (1984)); *see also Tallman v. Brown*, 7 Vet.App. 453, 463-65 (1995). This Court will defer to "VA's reasonable interpretation of a statutory provision when the law . . . leaves 'a gap for an agency to fill,'" and the agency fills that gap with an "interpretive regulation 'based upon a permissible construction of the statute.'" *Gallegos v. Principi*, __ F.3d __, __, No. 01-7037, slip op. at __ (Fed. Cir. Mar. 15, 2002) (citations omitted).

The appellant argues that 38 C.F.R. § 17.121 is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, because it requires that claims for reimbursement of expenses for unauthorized medical care and services be decided on an "irrational basis." He also argues that the regulation conflicts with 38 U.S.C. §§5107(b) and 7104(a). The Secretary argues that the Court should vacate the Board's decision and remand the claim because the Board failed to provide sufficient reasons and bases for its determination as required pursuant to 38 U.S.C. § 7104(d)(1) and *Allday v. Brown*, 7 Vet.App. 517, 572 (1995) (holding that a statement of reasons or bases must be adequate to enable claimant to understand precise basis for Board's decision, as well as to facilitate judicial review). The Court rejects both parties' arguments. The regulation does not conflict with the statutes, nor does the Board's error lie in its articulation of reasons and bases for its decision. Although the Board correctly found that "only a VA physician is empowered to determine when a veteran who received emergency hospital care could have been transferred to a VA medical center," the Court finds, upon de novo review, that the Board erred in limiting its review of the VA physician's determination.

The focus of the appellant's challenge is on the regulation's requirement that only a VA physician may decide when a medical emergency ends, for purposes of entitlement to benefits under 38 U.S.C. §1728 and 38 C.F.R. §17.120. Indeed, had the language of the regulation read as the

4

appellant suggests (i.e., that the Board is not permitted to review the private physician's opinions as to the ending point of the medical emergency), the regulation might arguably be invalid as being contrary to 38 U.S.C. §§ 5107(b) and 7104(a), which require the Board to consider *all* evidence available in deciding the appellant's eligibility to receive benefits. However, the regulation requires more than just a VA physician's unbridled determination as to the ending point of an emergency for purposes of granting or denying benefits.

Section 1728 of title 38 provides for the reimbursement of certain medical expenses pursuant to "such regulations as the Secretary shall prescribe," including reimbursing veterans entitled to hospital care at a VA facility for care they instead received from a non-VA facility, provided certain conditions are satisfied. The statute does not spell out the specific means by which such reimbursement is to be provided. Rather, the statute, in conjunction with the provisions of 38 U.S.C. §501, authorizes the Secretary to fill such administrative gaps in awarding benefits. Accordingly, the Secretary promulgated 38 C.F.R. §17.121, the pertinent part of which reads as follows:

> Claims for payment or reimbursement of the costs of emergency hospital care or medical services not previously authorized will not be approved for any period beyond the date on which the medical emergency ended. For the purpose of payment or reimbursement of the expense of emergency hospital care or medical services not previously authorized, an emergency shall be deemed to have ended at that point when a VA physician has determined that, *based upon sound medical judgement*, a veteran:
> (a) . . . could have been transferred . . . to a VA medical center . . . .
>
> (b) . . . could have reported to a VA medical center . . . .

38 C.F.R. §17.121 (2001) (emphasis supplied). This regulation simply fills the gaps left in the statute as to the mechanics used to award the benefits authorized by the statute, and is based upon a permissible construction of that statute. *See Gallegos, supra.*

Although the regulation requires that a VA physician determine when a medical emergency has ended, it also requires that the Board make a factual determination as to whether the physician exercised sound medical judgment in arriving at his decision. It is in this factual determination that the Board satisfies its requirement under 38 U.S.C. §§5107(b) and 7104(a), to review all available evidence. Contrary to the appellant's arguments, the regulation does not require the Board to blindly rubber-stamp the VA physician's decision as "conclusive." Despite the appellant's argument that the

Board, in deciding entitlement to benefits under 38 C.F.R. §17.121, cannot consider private physicians' opinions, the reality is that those private physicians' opinions must be considered by the VA physician before the VA physician can determine when an emergency ended. Moreover, it is clear from the record in this case that the VA physician did consider them.

By definition, every veteran seeking benefits under 38 U.S.C. §1728 and 38 C.F.R. §17.120 received medical care or services from a non-VA physician. A VA physician who has not provided the medical care or services in question must, perforce, consider the opinions of the attending physicians in order to make a sound medical determination related to the care and services in question. The history of the regulation supports this conclusion. *See* 49 Fed. Reg. 15548 (Apr. 19, 1984) ("The VA will obtain all available medical documentation and evidence from a treating facility to assist in making a decision based on sound medical judgment."). Sound medical judgment would seem to require, at a minimum, that the VA physician making the determination examine and account for available medical records. It is the Board's responsibility to ensure that the VA physician's determination as to the ending point of the medical emergency considered the private physicians' opinions and records. Here, the Board erred in determining that it could not do so. It had a positive duty to inquire into the "sound medical judgment" of the VA physician.

As an aside, the Court notes that the veterans' benefits system, at the administrative adjudication level, is by design a non-adversarial process. It does not, as the appellant suggests, and as may be typical in other courts, set the veteran against the Secretary. There are no "parties" prior to the commencement of the litigation phase of the process. VA physicians have no personal interest, pecuniary or otherwise, in whether particular veterans receive benefits under title 38 of the U.S. Code. They are, thus, simply "neutral" gatekeepers whose purpose is to render objective medical opinions. Someone must ultimately make a determination as to when a medical emergency ended for purposes of awarding or denying benefits under 38 U.S.C. §1728. The Board cannot perform this gatekeeper function because the Board is not authorized to render unsubstantiated medical determinations. *See Colvin v. Derwinski*, 1 Vet.App. 171 (1991). To permit diverse private physicians who provided the care and services at issue, and who might have a vested interest in the determination, to make that ultimate determination, would not be appropriate and would lead to dissimilar results in similar cases. Requiring that the decision be made by a neutral individual

6

capable of making such medical determination, as the regulation does, is an appropriate exercise of the Secretary's rule-making power. Additionally, by requiring that the ultimate decision be made by VA physicians, the Secretary ensures some amount of uniformity in decisions as to whether particular veterans receive benefits under the statute.

The Court points out that the regulation, as written, provides adequate safeguards to ensure that the Board and the veteran have appropriate avenues with which to address and/or challenge either all or part of the VA physician's decisions concerning the ending point of the medical emergency. The Board has not only the capability, but also the responsibility to make a factual determination as to whether the VA physician exercised sound medical judgement in deciding the ending point of a medical emergency at issue, and should the veteran disagree with the Board's factual findings on this point, the veteran has the right to appeal them.

Finally, the Court notes that the Board, in reviewing all the evidence available, in order to determine whether the VA physician exercised sound medical judgment, as required by sections 5107(b) and 7104(a), need not accept that physician's decision as conclusive. Rather, the Board may determine the VA physician did not exercise sound medical judgment because he or she failed to consider certain evidence, or otherwise failed to account for why his opinion was contrary to overwhelming evidence that might have lead to another conclusion. *Colvin,* 1 Vet.App. at 175 (inviting the Board to seek out other medical evidence if it was not satisfied that the evidence available was sufficient for it to make a determination). In such instances, the Board could require that the physician clarify certain inconsistencies, consider evidence not previously considered, or seek the opinion of another VA physician. Nothing in the regulation restricts the Board to one VA physician's opinions. *Id*.

### III. CONCLUSION

In this case, the Board failed to make a factual determination as to whether Dr. Wasserman exercised sound medical judgment in determining the ending point of the medical emergency at issue. In deciding whether Dr. Wasserman exercised sound medical judgment, the Board, by necessity, should have considered probative the views of the private physicians. Therefore, because the Board erred in limiting its review of Dr. Wasserman's determination, the Court will VACATE

the Board's decision and REMAND the claim for readjudication, so that the Board may have the opportunity to determine whether Dr. Wasserman's decision was based upon sound medical judgment. The Board's decision as to whether sound medical judgment was used must be based upon all the evidence available. *See Weaver v. Principi*, 14 Vet.App. 301, 302 (2001)*.* Additionally, on remand, the appellant is free to submit additional evidence and argument necessary to the resolution of his claim. *Kutscherousky v. West*, 12 Vet.App. 369, 372 (1999). The Board shall proceed expeditiously in accordance with section 302 of the Veterans' Benefits Improvement Act, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring the Secretary to provide for "expeditious treatment" for claims remanded by the Board or the Court). *See Drosky v. Brown*, 10 Vet.App. 251, 257 (1997); *Allday v. Brown*, 7 Vet.App. 517 (1995). Moreover, if the circumstances warrant, the Board is authorized and obligated to remand the claim to the VA regional office for further development. *See* 38 C.F.R. § 19.9(a) (1999); *Littke v. Derwinski*, 1 Vet.App. 90 (1990).

KRAMER, *Chief Judge*, concurring in the result: I agree with the majority that a remand is required in this case because the Board of Veterans' Appeals (Board or BVA) erred by limiting its review to whether a VA physician had determined under 38 C.F.R. § 17.121 (2001) that an emergency had ended. However, I disagree with the majority's holding that the Board may review only whether the VA physician's decision was based on sound medical judgment. For the reasons discussed below, I believe that § 17.121 is invalid to the extent that it is inconsistent with the statutory requirements of 38 U.S.C. §§ 5107(b) and 7104(a).

In its decision on appeal, the Board, based on § 17.121, found that the private physicians' opinions had "little probative value" in determining whether the emergency had ended before the appellant's transfer to Southwest Florida Regional Medical Center (Southwest Florida). Record (R.) at 6. The Board concluded that there was no legal basis upon which it could have granted the claim, because only a VA physician is empowered to determine whether an emergency had ended and because in this case a VA physician had concluded that the emergency had ended before the appellant was transferred to Southwest Florida. R. at 6.

The thrust of the appellant's argument as to why § 17.121 is invalid is that, under the regulation, a decision by a VA physician as to whether an emergency has ended is conclusive and thus not reviewable by the Board. The Secretary counters that such a legal decision is reviewable but only as to whether the decision was "based on sound medical judgment," 38 C.F.R. § 17.121. That regulation provides that "an emergency shall be deemed to have ended at that point when a VA physician has determined that, based on sound medical judgment, a veteran . . . could have been transferred from the non-VA facility to a VA medical center . . . or . . . could have reported to a VA medical center for continuation of treatment for the disability." 38 C.F.R. § 17.121.

"The Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and *are consistent with those laws*." 38 U.S.C. § 501(a) (emphasis added). Neither the reimbursement statute, 38 U.S.C. § 1728, nor the implementing regulations, 38 C.F.R. §§ 17.120 and 17.121, expressly addresses BVA review.

Nonetheless, "[a]ll questions in a matter which under [38 U.S.C. §] 511(a) . . . is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary. Final decisions on such appeals shall be made by the Board." 38 U.S.C. § 7104(a); *see also* 38 C.F.R. § 17.132 (2001) (after denial of claim made under 38 U.S.C. § 1728, "claimant shall be notified . . . of the right to initiate an appeal to the Board . . . ."). According to the plain language of section 7104(a), all section 511(a) questions, including whether an emergency has ended (as contrasted with the more limited question of whether a VA physician's decision was based on sound medical judgment) are subject to BVA review. *See Cotton v. Brown*, 7 Vet.App. 325, 327 (1995). Accordingly, such BVA review is "based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation," 38 U.S.C. § 7104(a), and must therefore include fact finding and development of the evidence where appropriate, *see Cotton*, 7 Vet.App. at 327-29 (remanding where Board made factual finding that there was no emergency at time that appellant was admitted to private hospital but Board failed to consider private doctor's statement on that issue); *Hennessey v. Brown*, 7 Vet.App. 143, 147 (1994) (remanding for, inter alia, "further evidentiary development as to whether the appellant's condition constituted an emergency . . . and . . . whether a VA facility was 'feasibly available' for the recommended surgery"). By statute,

therefore, the Board's review of section 511(a) matters is plenary, without restrictions on the questions or evidence of record the Board may consider.

Moreover, as part of the Board's review, "[w]hen there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the [Board] shall give the benefit of the doubt to the claimant." 38 U.S.C. § 5107(b); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 54 (1990) ("when a veteran seeks benefits and the evidence is in relative equipoise, the law dictates that veteran prevails"). As to the Secretary's argument that the section 5107(b) benefit-of-the-doubt rule does not apply to § 17.121 decisions, evidentiary determinations as to whether there was an emergency are clearly subject to chapter 51 of title 38 of the U.S. Code, including the benefit-of-the-doubt rule. *See Cotton* and *Hennessey*, both *supra*; *see also Woodson v. Brown*, 8 Vet.App. 352, 356 (1995), *aff'd in pertinent part*, 87 F.3d 1304, 1307 (Fed. Cir. 1996) (holding that appellant's section 1728 claim was not well grounded under former 38 U.S.C. § 5107(a)); *Parker v. Brown*, 7 Vet.App. 116, 119 (1994) (same). If BVA review is limited to whether the VA physician's determination was based on sound medical judgment, the possibility of equipoise, and therefore the benefit of the doubt, is eliminated because the Board would be required to accept a VA physician's opinion as conclusive if based on sound medical judgment, even though it might not be persuasive enough to meet the equipoise threshold. In other words, a construct requiring the Board to accept as conclusive a VA physician's determination based on sound medical judgment would not take into account the possibility that two physicians, both exercising sound medical judgment, could have rendered diametrically opposed opinions and that one could be more persuasive than, or at least equally persuasive as, the other. In this regard, the Court notes that a VA physician's opinion is not necessarily the most credible evidence in a particular case. The Court has long held that a specific physician is not to be given preferred status, let alone determining status, and that evidentiary determinations – including assessing credentials and credibility of medical opinions – are to be based on all the evidence of record. *See Guerrieri v. Brown*, 4 Vet.App. 467, 471-73 (1993); *see also White v. Principi*, 243 F.3d 1378, 1381 (Fed. Cir. 2001).

Accordingly, I would hold that, to the extent that it restricts BVA review of a VA physician's decision, § 17.121 is invalid because it is inconsistent with the veterans' benefits statutory scheme, specifically sections 5107(b) and 7104(a). *See* 38 U.S.C. § 501.