# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-2796

LLEWELLYN R. MILLER, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 13, 2019                        Decided January 16, 2020)

*J. Corey Creek*, with whom Bryan Andersen and Glenn R. Bergmann, all of Bethesda, MD, were on the brief for the appellant.

*Melissa A. Timbers*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Kenneth A. Walsh*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before GREENBERG, TOTH, and FALVEY, *Judges*.

FALVEY, *Judge*: The appellant, Llewellyn R. Miller, through counsel appeals a May 7, 2018, Board of Veterans' Appeals (Board) decision that denied service connection for a bilateral foot disability and gastroesophageal reflux disease (GERD), both including as secondary to a service-connected disability, and that denied service connection for chronic fatigue syndrome, including as caused by an undiagnosed illness.[1] Mr. Miller's appeal is timely and within our jurisdiction.[2]

This matter was submitted to a panel of this Court, with oral argument, to address the proper remedy when a VA medical examiner fails to address the veteran's reports of his medical history

---

[1] Record (R.) at 2-20; The Board also denied service connection for right ear hearing loss, remanded a claim for service connection for a low back disability, and granted service connection for left ear hearing loss. Because Mr. Miller makes no arguments about these issues, *see Pederson v. McDonald*, 27 Vet.App. 276, 283 (2015) (en banc) ("this Court, like other courts, will generally decline to exercise its authority to address an issue not raised by an appellant in his or her opening brief"), and we are without jurisdiction to address the remand, *see Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (a Board remand "does not represent a final decision over which this Court has jurisdiction"), or disturb the grant of benefits, *see Medrano v. Nicholson*, 21 Vet.App. 165, 170-71, (2007) (noting that Court is not permitted to reverse Board's favorable findings of fact), the Court will not address these matters on appeal.

[2] 38 U.S.C. §§ 7252(a), 7266(a).

and symptoms and the Board does not address the credibility of those statements or otherwise find the veteran not credible. Because we presume that the Board reviewed all relevant evidence and we may review its implicit findings of fact, including implicit credibility determinations, we hold that when the examiner fails to address the veteran's lay evidence, and the Board fails to find the veteran not credible or not competent to offer that lay evidence, the proper remedy is for VA to obtain a new examination.

## I. BACKGROUND

Ordinarily, we would describe the content of a veteran's statements or other evidence—such as medical examinations—in detail. But because this matter deals with the proper remedy for when an examiner skips over those statements, the substance of the statements or the exam is not all that relevant to our analysis. It is not what the exams address but what they omit that brings us here. Thus, we focus only on the facts needed to understand how we got here and where Mr. Miller's case will be going.

Mr. Miller served on active duty in the Navy from June 1988 to July 1994.[3] In April 2011, he sought service connection for stiffness in his joints, fatigue, and stomach illness, asserting that these disabilities began in 1993 while he was still in service.[4] In September 2011, he provided more details about his symptoms.[5] He explained when he began experiencing heartburn and indigestion and how he first treated these and other symptoms, including foot problems, with over-the-counter medications. He also asserted that many of his symptoms were caused by his service during the Persian Gulf War.[6]

Thus, in April 2012, a VA examiner evaluated Mr. Miller using the "Gulf War General Medical Examination Disability Benefits Questionnaire" (April 2012 exam) used by VA for claims related to the presumptions available to veterans with qualifying Persian Gulf War service.[7] Following this examination, the regional office (RO) denied his GERD and fatigue claims in a

---

[3] Record (R.) at 1858.

[4] R. at 1849-55.

[5] R. at 1787.

[6] *Id.*

[7] R. at 1434-1510; *see also* 38 U.S.C § 1117 (establishing presumptions for veterans with qualifying Persian Gulf War service).

2

June 2012 rating decision.[8] Mr. Miller responded in June 2012 with a Notice of Disagreement and by filing a new claim for a bilateral foot disability.[9] And the RO also denied his claim for a bilateral foot disability.[10]

Eventually, Mr. Miller's claims made it to the Board for the first time. Along the way, he submitted various statements describing the symptoms of his disabilities.[11] In December 2016, the Board remanded his foot, GERD, and fatigue claims,[12] leading to a gastrointestinal (GI) examination to address GERD and another medical examination to address his foot claim, both in March 2017.[13]

In addressing GERD, the examiner opined that this disability was unrelated to service because Mr. Miller's in-service GI symptoms had resolved and he was not evaluated for additional GI issues until 2009. As for the bilateral foot disability, the examiner explained that it was unrelated to service because it did not bother him in service. In both opinions, it is inescapable that the examiner did not acknowledge Mr. Miller's statements that he has had foot pain and GI issues since service and that he self-medicated for both problems while in service.

After the March 2017 examinations, Mr. Miller's claims returned to the Board, leading to the decision here on appeal. In that decision, the Board found that VA had satisfied its duty to assist in part, because the VA medical examinations were adequate. Mr. Miller disagrees. He asks us to find all three examinations inadequate and to reverse the Board's finding that VA had satisfied its duty to assist.

## II. ANALYSIS

### A. Legal Landscape

Before we set out to consider whether Mr. Miller seeks the appropriate relief, we will review what makes an examination adequate and how the Secretary's duty to assist comes into play. The Secretary has a duty to assist claimants in obtaining evidence necessary to substantiate

---

[8] R. at 1417-22.

[9] R. at 1406-7.

[10] R. at 1230-35.

[11] *See, e.g.*, R. at 1194 (explaining that his foot disability related to prolonged standing while wearing leather boots).

[12] R. at 436-55.

[13] R. at 329-47.

their claim for a benefit.[14] Part of this duty to assist requires that the Secretary provide a medical examination or obtain a medical opinion "when such an examination or opinion is necessary to make a decision on the claim."[15] And once the Secretary seeks to provide an examination, he must provide an adequate one or, at a minimum, tell the claimant why one cannot be provided.[16]

As for our review, the adequacy of a medical examination is a finding of fact that we review under the "clearly erroneous" standard.[17] "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[18] And "[a]n opinion is adequate where it is based upon consideration of the veteran's prior medical history and examinations and also describes the disability in sufficient detail so that the Board's evaluation of the claimed disability will be a fully informed one."[19]

The bottom line is that "VA medical examiners and private physicians offering medical opinions in veterans benefits cases are nothing more or less than expert witnesses."[20] Thus, their opinions "are adequate when they sufficiently inform the Board of a medical expert's judgment on a medical question and the essential rationale for that opinion."[21] This includes addressing a veteran's reports of symptoms and medical history.

One of our frequently cited cases for this requirement is *Barr v. Nicholson*.[22] In that case, the Board denied service connection for varicose veins because it found that the veteran was not competent to report that his varicose veins had started in service.[23] We held that the Board erred

---

[14] 38 U.S.C. § 5103A(a)(1).

[15] 38 U.S.C. § 5103A(d)(1).

[16] *See Daves v. Nicholson*, 21 Vet.App. 46, 52 (2007).

[17] *D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008).

[18] *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[19] *D'Aries*, 22 Vet.App. at 104.

[20] *Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 304 (2008).

[21] *Monzingo v. Shinseki*, 26 Vet.App. 97, 105 (2012).

[22] 21 Vet.App. 303, 311 (2007).

[23] *Id*. at 306.

and explained why a lay individual could report the onset of varicose veins.[24] But we were not done.

We also addressed the adequacy of a medical examination that the Board relied on to deny that appellant's claim. We found the examination inadequate because the examiner could not access the claimant's medical records and "did not indicate whether he considered Mr. Barr's assertions of continued symptomatology."[25] Despite finding the examination inadequate, we remanded the case to the Board for it to make credibility determinations about the appellant's assertions of his continued varicose vein symptomology.[26] As we noted, credibility was a determination the Board would have reached only after finding the veteran competent to report his symptoms—something it did not do because it erroneously found him not competent to report varicose veins.[27] Further, the credibility determination was particularly warranted in *Barr* because, if his statements were credible, the veteran may have been entitled to service connection under 38 C.F.R. § 3.303(b)—a presumptive theory of service connection.[28] Despite remanding for the Board to address credibility, *Barr* also tied the adequacy of an examination to whether the examiner considers a veteran's reports of symptoms.[29]

We relied on this part of *Barr* in *McKinney v. McDonald* to find a hearing loss examination inadequate.[30] In *McKinney*, besides other claims, VA denied the appellant service connection for bilateral hearing loss.[31] Like in *Barr*, the main question for the Court was not the adequacy of a medical examination. Instead, the focus was on whether hearing loss noted upon entry qualified as a preexisting disability under 38 U.S.C. § 1111.[32] After finding that the Board erred in concluding

---

[24] *Id.* at 309.

[25] *Id.* at 311.

[26] *Id.* at 312.

[27] *Id.* at 308 ("Once evidence is determined to be competent, the Board must determine whether such evidence is also credible.").

[28] Since then, the Federal Circuit has clarified that § 3.303(b) applies only to the chronic diseases enumerated in 38 C.F.R. §3.309(a), thus making it inapplicable to varicose veins and limiting parts of *Barr*. *Walker v. Shinseki*, 708 F.3d 1331, 1338 at n. 4 (Fed. Cir. 2013)

[29] *Barr*, 21 Vet.App at 311.

[30] 28 Vet.App. 15, 30 (2016).

[31] *Id.* at 18.

[32] *Id.* at 19.

that the veteran was not entitled to the presumption of soundness and reversing that determination, we turned to the hearing loss examination.

We found that examination inadequate for two reasons. First, the examiner failed to provide an adequate rationale for why she would have to resort to speculation to render a nexus opinion; and second, the examiner failed to consider the veteran's testimony when formulating her opinion.[33] In recounting the testimony, we noted that "[t]he Board did not make a finding that this testimony was not credible." [34] And then, relying on *Barr* for its "finding that a medical examination that ignores lay assertions regarding continued symptomatology is inadequate because it fails to take into account the veteran's prior medical history," we held that the examination in *McKinney* was likewise inadequate.[35] But, instead of remanding to the Board for a credibility determination, we ordered that the Board obtain a new medical examination.[36] This different remedy gives us the dispute at hand.

## B. The Parties' Arguments

Although Mr. Miller and the Secretary agree that this matter must be remanded, they don't agree about why. The Secretary says that we should remand because the Board failed to determine Mr. Miller's credibility and to address his lay statements. Mr. Miller says that it wasn't the Board that failed to address his statements, but the VA examiners. He points out that neither the March 2017 foot examination nor the March 2017 GI examination addresses his reports of symptoms. Thus, he argues that, rather than let the Board discuss his credibility, we should reverse its finding that VA satisfied its duty to assist because VA provided inadequate medical examinations and order new medical examinations.

In the end, the Secretary does not dispute that the examinations fail to address testimony from the veteran. That the examinations are inadequate given the veteran's reports is not a contentious issue here. Thus, our opinion does not dissect the legal considerations involved in determining whether an examiner appropriately considered a veteran's statements. Instead, the dispute here is about the remedy—do we remand for credibility-related reasons or bases or do we

---

[33] *Id*. at 29-30.

[34] *Id*. at 30 n. 14.

[35] *Id*. at 30; *citing Barr*, 21Vet.App. at 310-11.

[36] 28 Vet.App. at 30.

reverse and remand for new examinations? To answer this question, we must resolve which of our cases is controlling here, *McKinney v. McDonald*[37] or *Barr v. Nicholson*.[38]

This is because the Secretary's argument—that we should remand for a credibility determination—finds support in *Barr,* while Mr. Miller's—that we should reverse the duty to assist determination and remand for new examinations—finds support in *McKinney*. And so, this is how the remedy dispute arises. We have two precedential decisions that, at first blush, appear to support different results. To aid our resolution of this case, we asked the parties to provide supplemental briefing addressing whether there is a conflict between these two cases. Although the parties agree that the two can be reconciled, they remain at odds about the result of this case.

The Secretary argues that the Court should remand for the Board to make an initial credibility determination. Essentially, the Secretary tries to get the same result as in *Barr*. He makes the case that the Board needs to determine whether Mr. Miller is credible before VA gives him an examination. He also advocates for a narrow reading of *McKinney*, one that focuses on our determination that the examination for hearing loss was inadequate because the examiner failed to explain why she would have to resort to speculation to offer a nexus opinion. Finally, he explains that there is no support for the Court to conclude that the Board made an implicit credibility determination and that remanding for a new examination where the Board is silent about credibility would lead to wasted resources, because the examinations would be unnecessary if the Board first finds the veteran not credible.

On the other hand, Mr. Miller maintains, as he did in his opening brief, that *McKinney* is controlling here. He argues that *McKinney* should be read as holding that an examination is inadequate if the examiner fails to consider the veteran's reports of symptoms and that the Court does not need to remand for a credibility determination if there is no indication that the Board found the veteran not credible. Instead, he argues that we may conclude that the Board found the veteran credible, because we presume that the Board reviewed all the evidence but, at the same time, we require that the Board discuss only the relevant evidence. Thus, he reasons that the Board would only be obliged to offer an explanation if it did not find a claimant credible. He further points out that the Secretary's argument—that the Board must first determine credibility—flips the

---

[37] *Id.*

[38] 21 Vet.App. at 312.

7

system on its head. After all, veterans are examined before they get to the Board. Thus, the duties of the examiner or the adequacy of the examination cannot be controlled by what the Board determines about the veteran's credibility down the line. And, he also asks us to consider that an examiner's opinion about the plausibility of lay contentions could inform the Board's credibility determination, thus further supporting his argument that a new examination should be ordered before the Board tackles credibility.

## C. *Barr* and *McKinney*

With strikingly different views of the law, we start our analysis where we find common ground. There is no question that adequately informing the Board of the veteran's disability while considering prior medical history requires addressing the veteran's lay reports of symptomatology.[39] Thus, a "VA examiner's failure to consider [the veteran's] testimony when formulating her opinion renders that opinion inadequate."[40] This is something that both *Barr* and *McKinney* agree on—an examination is inadequate if the medical professional fails to consider the veteran's own lay reports of symptoms.

That said, the Secretary is mistaken when he reads *Barr* to hold that we must remand for the Board to address the credibility of the veteran's testimony every time the examiner fails to address that testimony in an examination. The central issue in *Barr* was whether the veteran was competent to report that he had varicose veins. Because the Board found he was not competent, it did not reach the issue of his credibility. This is because, it is only "once evidence is determined to be competent, [that] the Board must determine whether such evidence is also credible."[41] And so, when the Board erroneously determined that the veteran was not competent to report his symptoms, it stopped considering the credibility or weight of that evidence. Thus, we remanded for the Board to complete its credibility determination as it related to the Board's analysis of presumptive service connection *and* remanded for VA to provide a new and adequate examination that considered the veteran's lay statements about his continued symptomatology or to explain why it would not provide one.

---

[39] *See Barr*, 21 Vet.App. at 310-11.

[40] *McKinney*, 28 Vet.App. at 30.

[41] *See Barr*, 21 Vet.App. at 308; *citing Layno v. Brown*, 6 Vet.App. 465 (1994) ("Competency, however, must be distinguished from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted.").

By contrast, in *McKinney*, nothing stopped the Board from reaching credibility.[42] Thus, when we found that the examiner did not consider the veteran's reports of his hearing symptoms, we ordered a new examination.[43] There was nothing for the Board to do about the veteran's reports.

The Secretary argues that the only prejudicial error in that part of *McKinney* was that the Board relied on an opinion where the examiner failed to explain why she could not offer a definitive nexus opinion. However, this argument does not hold up with what we said in *McKinney*.

Indeed, we discussed both the examiner's failure to explain why she could not give her opinion without resorting to mere speculation and, cited *Barr* and other relevant case law, to conclude that "the VA examiner's failure to consider Mr. McKinney's testimony when formulating her opinion renders that opinion inadequate."[44] In the end, we concluded that "because the examiner did not provide a clear rationale for her opinion *or consider relevant evidence in formulating her opinion*, the Court holds that the Board erred in relying on that opinion to deny Mr. McKinney's claim."[45]

Thus, it is simply not true that *McKinney* led to a new opinion *only* because of a lack of rationale.[46] Instead, either reason—lack of rationale or failure to consider relevant evidence— supported a new medical opinion. And so, we read *Barr* and *McKinney* to say that an examiner must address the veteran's relevant statements and, if the examiner fails to address the veteran's reports of his or her medical history and the Board is silent about the credibility of the veteran's lay statements, the Court will order a new examination absent an indication that the Board did not reach credibility. This means that when we review a Board decision reliant on a medical opinion that does not address the veteran's own reports of symptoms, we will order a new examination if the Board never impugned the veteran's credibility.

This dovetails with our musculoskeletal rating precedent. For example, in *Sharp v. Shulkin* we ordered a new examination based on the examiner's failure to adequately elicit evidence about the frequency, severity, duration, or functional loss manifestation of the veteran's flare-ups. We explained that "case law and VA guidelines anticipate that examiners will offer flare opinions

---

[42] 28 Vet.App. at 31, n.14.

[43] *Id*. at 30-31.

[44] *Id.*

[45] *Id.* (emphasis added).

[46] *Id.*

based on estimates derived from information procured from relevant sources, *including the lay statements of veterans*."[47] We then sent the matter back for a new examination addressing the veteran's reports of his flare-ups. In so doing, we had no concern on whether the Board first found the veteran's assertion of flare-ups credible. Instead, we ordered a new exam that addressed the veteran's testimony.[48]

We see no reason to differentiate service-connection cases from musculoskeletal evaluation case law when it comes to the requirement that medical opinions address lay evidence to adequately inform the Board about the veteran's disability.[49] What's more, we see no reason to accept the Secretary's invitation to throw lay statements into their own, least favored category. As it stands, examiners are generally required to address relevant medical or service records without a prior credibility determination by the factfinder.[50]

If we accepted the Secretary's argument, an examiner would be required to address lay statements only once a factfinder found those statements credible. This would make lay evidence different from any other evidence that a medical examiner must address. It would also flip the process on its head—examinations are normally given before credibility is decided—and the Secretary's proposal would lead to pointless remands before a veteran would have an adequate examination. We also agree with Mr. Miller that the Board's credibility determination can benefit from information obtained in a medical opinion.

i. Role of Exams in Credibility Determinations

Although it is the Board that must make a credibility determination, something it may not outsource to a medical examiner, we have held that the Board should consider whether a favorable medical opinion corroborates the veteran's assertions of an in-service injury.[51] Thus we have recognized that medical evidence may play a role in the Board's evaluation of credibility.

For instance, in *Kahana v. Shinseki* we held that the Board improperly made its own medical determination when it determined that the veteran's ACL injury would have required

---

[47] 29 Vet.App. 26, 35 (2017).

[48] *Id.*

[49] *D'Aries*, 22 Vet.App. at 104.

[50] *See Monzingo*, 26 Vet.App. at 105; *see also Stefl v. Nicholson*, 21 Vet.App. 120, 124 (2007) (discussing how a medical opinion must address the relevant facts and medical science and the factors to consider in assigning the opinion probative value).

[51] *Washington v. Nicholson*, 19 Vet.App. 362, 369 (2005).

treatment in service.[52] We also held that the Board improperly drafted its questions for a medical exam about the veteran's knee by including its conclusion that there was no evidence of an in-service injury in the question for the examiner.[53] Even so, our opinion suggested questions to the Board that would have led to a medical opinion that could help the Board determine whether the veteran's reports were plausible.[54] We suggested the Board ask "whether there is any medical reason to accept or reject the proposition that had the appellant had a right knee injury in service, such injury could have [led] to his current condition" or "what types of symptoms would have been caused by the type of ACL injury at issue."[55] Thus, we laid out specific examples of how a medical examination could inform the Board's credibility analysis.

What is more, Judge Lance offered an even more in-depth look at how medical opinions can inform credibility findings in his *Kahana* concurrence.[56] He explained how the Board might benefit from a medical opinion in making credibility determinations. He observed that, when considering the veteran's assertions against the lack of corroborating evidence within service treatment records, "the Board may reasonably conclude that a compound fracture of a bone would have been observed and recorded, but would require medical evidence to determine whether a particular type of cancer would have manifested observable symptoms in service that likely would have been reported and recorded."[57] Indeed, "a medical opinion may help resolve certain kinds of disputed issues of fact, such as whether a particular injury occurred in service or the precise nature of an intervening injury after service."[58]

These examples reveal the useful role that a medical examiner can play in helping the Board evaluate the credibility of the veteran's reports. The examiner can better inform the Board's understanding of the medical feasibility of the veteran's lay statements. If an examiner explains that the veteran's assertions are generally inconsistent with medical knowledge or implausible, the Board can weigh that when addressing the veteran's credibility. Or an examiner may explain that

---

[52] 24 Vet.App. 428, 435 (2011).

[53] *Id.* at 436.

[54] *Id.* at 437.

[55] *Id*.

[56] *Id.* at 440 (Lance, J., concurring).

[57] *Id*.

[58] *Id.* at 442.

the veteran's reports about symptoms or an in-service injury align with how the disease or disability is known to develop. Any way you look at it, the Board may benefit from this information in makings its credibility determinations.[59]

Thus, the examiner's obligation to address lay evidence cannot depend on a future finding of credibility. The examiner must address the veteran's lay statements to provide the Board with an adequate medical opinion.[60] And absent an indication that the Board found that lay evidence not credible, or had a reason not to address its credibility—such as in *Barr* where it found the veteran not competent to report the symptoms—we will conclude that the Board found the lay evidence credible and order a new examination that addresses this evidence. This does not involve impermissible fact-finding but is consistent with our long practice of reviewing implicit factual determinations. We should not remand a matter because the Board failed to expressly find every piece of evidence credible or explain how it stacked up with the rest of the file.

### ii. Our Review of Implicit Fact-Finding

After all, there "is a presumption that VA considered all of the evidence of record."[61] And "[t]he fact that [evidence] was not specifically mentioned in the Board's decision . . . is insufficient to overcome this presumption." [62] Thus, the Board does not have to discuss all the evidence, but it must discuss the *relevant* evidence.[63] And in so doing, it must provide an explanation "for its rejection of any material evidence favorable to the claimant."[64] We note that the Secretary does not ask us to overrule our own precedent nor, even more implausibly, ignore the Federal Circuit. Thus, absent some indication to the contrary, we will continue to presume that the Board reviewed the lay evidence in the record. And this means that, if credibility of some evidence was a relevant issue for the Board, we would expect some discussion on the matter.

Put another way, when the record includes the veteran's lay reports, which the Board did not find to be not credible, we may ordinarily conclude that it made an implicit credibility determination. If something as fundamental as the veteran's credibility were an issue, we would

---

[59] *Id.*; *see also Washington*, 19 Vet.App. at 369.

[60] *See Barr*, 21 Vet.App. at 310-11; *see also McKinney*, 28 Vet.App. at 30.

[61] *Newhouse v. Nicholson*, 497 F.3d 1298, 1302 (Fed. Cir. 2007).

[62] *Id.*

[63] *See Robinson v. Peake*, 21 Vet.App. 545, 552 (2008), *aff'd sub nom. Robinson v. Shinseki,* 557 F.3d 1355 (Fed. Cir. 2009).

[64] *Thompson v. Gober*, 14 Vet.App. 187, 188 (2000).

12

expect the Board to say something. And because a determination about credibility is a finding of fact, we should treat it like other findings of fact. [65]

For example, in *McClain v. Nicholson*,[66] we read the Board's statements about medical examinations and major depressive disorder to constitute an implicit finding that the veteran suffered from a disorder due in part to service, although the disorder had resolved before adjudication of the claim.[67] We thus held that we would not overturn this favorable determination, but remanded the matter "[b]ecause the Board implicitly found that Mr. McClain had depression at some point during the processing of his claim."[68]

And we've had no problems reviewing other implicit factual determinations by the Board.[69] In fact, VA can implicitly deny entire claims under the "implicit denial rule." This rule "'provides that, in certain circumstances, a claim for benefits will be deemed to have been denied, and thus finally adjudicated, even if the [VA] did not expressly address that claim in its decision.'"[70] If VA, including the Board, can deny whole claims without expressly saying so, and this Court has reviewed implicit fact-finding and denials, why make an exception now?[71] It can't be that we make a special rule for implicit credibility determinations only to make denials easier for the Secretary. Thus, we see no reason to treat credibility any differently.

When the Board has made its decision without finding that the veteran is not competent to report symptoms and nothing suggests that the Board failed to review the evidence at issue, we

---

[65] *See Hickson v. Shinseki*, 23 Vet.App. 394, 405 (2010).

[66] 21 Vet.App. 319, 322 (2007).

[67] *Id*.

[68] *Id*. at 323. *Citing Stankevich v. Nicholson*, 19 Vet.App. 470, 472 (2006) (reviewing Board's implicit findings of fact).

[69] *See Mitchell v. Shinseki,* 25 Vet.App. 32, 43 (2011) ("[T]the Court finds that the Board's implicit finding that the October 2006 medical opinion was adequate for rating purposes and its finding that duty to assist was satisfied are clearly erroneous."); *Lineberger v. Brown*, 5 Vet.App. 367, 370 (1993) ("conclud[ing] that the [Board's] implicit and explicit findings, that appellant neither has lost the use of two extremities nor is bilaterally blind, are plausible and, therefore, are not clearly erroneous")*; Cook v. Brown*, 4 Vet.App. 231, 238 (1993) (reviewing the Board's "implicit" factual determination that the interval between characteristic manifestations of an ulcer constituted an "unreasonable time lapse" for clear error); *Ashmore v. Derwinski,* 1 Vet.App. 580, 583 (1991) ("Based on this listing of supportive clinical findings, the Court cannot say that the [Board]'s implicit determination that Ashmore was not 'severely' disfigured is clearly erroneous.").

[70] *Cogburn v. McDonald*, 809 F.3d 1232, 1235 (Fed. Cir. 2016), *quoting Adams v. Shinseki*, 568 F.3d 956, 961 (Fed. Cir. 2009).

[71] The Secretary agrees that we may review the Board's implicit findings of fact, but he asks that we not do so here. *See Miller v. Wilkie*, U.S. Vet.App. No. 18-2796 (November 15, 2019: Secretary's Notice of Supplemental Authorities).

13

may reasonably conclude that it implicitly found the veteran credible. This is particularly true when, as here, the Board acknowledges the lay evidence and finds the veteran competent to offer that evidence. At that point, we must surely expect the Board to say something if it sees something wrong with the veteran's credibility. And this helps explain why *McKinney* is the proper rule much of the time and why the proper remedy is to order a new examination where a VA medical examiner fails to address the veteran's statements about medical history and the Board does not address the credibility of those statements.

In the end, we see no benefit to sending the case back to the Board to provide reasons or bases for a credibility determination based on the same record. It already reviewed this record once. It did not find an issue with the veteran's credibility. Although "[t]he Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented in the record,"[72] the Board plainly did not find credibility to be a material issue.

What is more, the Board's "statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court."[73] And, where the Board has not found the veteran to not be credible or otherwise called credibility into question, neither our review nor the veteran's understanding is generally frustrated when it comes to credibility. If anything, it would be confusing for the Board to go over the exact same record yet, suddenly, with no new evidence, divine a reason to question the veteran's credibility. Thus, we hold that where the examiner failed to address the veteran's lay evidence and the Board fails to find the veteran not credible or not competent to offer that lay evidence, the proper remedy is for VA to obtain a new examination.

### D. Application to Mr. Miller

With this clarified, we turn to Mr. Miller's case. There is no question that the March 2017 examinations are inadequate because the examiners failed to consider the veteran's lay statements. Thus, the Board's determination that the duty to assist was met was clearly erroneous. And now that we know that the proper remedy is for us to order that VA obtain a new examination, without

---

[72] *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *see* 38 U.S.C. § 7104(d)(1).

[73] *Allday*, 7 Vet.App. at 527.

a pause for the Board to talk about Mr. Miller's credibility, we will order VA to obtain new examinations.

At oral argument, counsel for Mr. Miller suggested that the Board on remand phrase its questions in the alternative. That is, Mr. Miller's counsel suggested that the Board ask the medical examiner to offer an opinion on nexus while accepting Mr. Miller's statements as true and then offer one while rejecting the veracity of Mr. Miller's reports. This proposal makes sense, as it would leave the Board with an opinion that it can use if other evidence causes the Board to find Mr. Miller not credible. After all, the Board may still find the veteran not credible. As we have elaborated on,[74] a medical opinion may inform the Board about credibility. This means that if the Board found facts underlying the medical opinion not credible, it could destroy its probative value.[75] At the same time, not every medical opinion that considers a fact later found not credible by the Board must lose all its probative value.

Our cases have held that, where the Board finds the facts supporting the examiner's conclusion not credible, the resulting medical opinion lacks probative value.[76] That said, if the opinion does not depend on the facts the Board later finds not credible, there should be no reason for the opinion to have lesser probative value. For example, if a medical doctor explained that none of a veteran's in-service injuries caused cancer, we see no reason why it would make the opinion less probative if the Board later found that one of the injuries never occurred. Still, we will leave it to the Board to craft its own questions. After all, it is VA that has expertise in developing these claims.[77] And so, we order that VA obtain new examinations for the veteran's foot and GI disabilities that adequately consider his lay assertions.

### E. Fatigue

We will also order a new examination addressing whether the veteran's fatigue should be considered a qualifying chronic disability under 38 U.S.C. § 1117. The Secretary concedes too much by offering that the Board failed to consider the veteran's statements about his fatigue and offering a remand for better reasons or bases. We do not perceive a reasons or bases error by the

---

[74] *See supra at* 10-11.

[75] *See Reonal v. Brown*, 5 Vet.App. 458, 460-61 (1993).

[76] *Id.*; *see also Swann v. Brown,* 5 Vet.App. 229 (1993); *Wilson v. Derwinski*, 2 Vet.App. 614, 618 (1992).

[77] *Jarrell v. Nicholson*, 20 Vet.App. 326, 339 (2006) ("Courts should 'respect the congressional delegation of authority to agencies in the matters entrusted to them and should also respect their specialized expertise in deciding the matters before them.'") *quoting Kirkpatrick v. Nicholson*, 417 F.3d 1361, 1365 (Fed. Cir. 2005).

Board matching the one pushed by the Secretary. Nor does Mr. Miller point us to any evidence that the Board ignored. Still, although we cannot identify any statements that VA failed to consider related to fatigue, we agree with Mr. Miller that his fatigue symptoms warrant development under the provisions covering Persian Gulf War veterans in section 1117. The Board likewise considered the veteran's claim under these provisions and the April 2012 examination was done using a form for Persian Gulf examinations.[78]

But, as Mr. Miller points out, since the April 2012 examination, we have clarified that when addressing whether a condition is a medically unexplained chronic multisymptom illness (MUCMI), "'pathophysiology' and 'etiology' are decisive factors in determining whether an illness is 'medically unexplained.'"[79] In filling out the 2012 examination, however, the examiner failed to answer whether both the etiology and pathophysiology of Mr. Miller's fatigue are known. Under *Stewart*, answers to these questions are required to provide an adequate examination and for VA to adequately consider whether the veteran's disability qualifies as chronic fatigue syndrome or a different MUCMI under section 1117. Thus, VA also must provide Mr. Miller with a new medical examination addressing his fatigue.

F. No Broader Remedy

Because these claims are being remanded, the Court need not address Miller's additional arguments that would create no broader remedy than a remand.[80] In pursuing his claims on remand, the veteran will be free to submit additional argument and evidence on the remanded matters, and he has 90 days to do so from the date of the postremand notice VA provides.[81] The Board must consider any such evidence or argument submitted.[82]

---

[78] R. at 1434.

[79] *Stewart v. Wilkie,* 30 Vet.App. 383, 388 (2018).

[80] *See Mahl v. Principi*, 15 Vet.App. 37, 38 (2001) (per curiam order) ("[I]f the proper remedy is a remand, there is no need to analyze and discuss all the other claimed errors that would result in a remedy no broader than a remand.").

[81] *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order); *see also Clark v. O'Rourke*, 30 Vet.App. 92, 97 (2018).

[82] *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *see also Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) ("A remand is meant to entail a critical examination of the justification for the decision.").

### III. CONCLUSION

We REVERSE the Board's determination that VA satisfied its duty to assist. The May 7, 2018, Board decision is SET ASIDE, and the matter REMANDED for VA to obtain new medical examinations for the veteran's claims and for further consideration consistent with this opinion.